USCA1 Opinion

 

 March 10, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 92-2001 JORGE SARIT AND DENNIE ESPAILLAT, Plaintiffs, Appellees, v. U.S. DRUG ENFORCEMENT ADMINISTRATION, ET AL., Defendants, Appellants. ____________ ERRATA SHEET The opinion of this court issued on February 23, 1993, is amended as follows: Page 8, line 6 from the bottom: "statue" should read "statute". February 23, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2001 JORGE SARIT AND DENNIE ESPAILLAT, Plaintiffs, Appellants, v. U.S. DRUG ENFORCEMENT ADMINISTRATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ Cyr, Circuit Judge. _____________ ____________________ David N. Cicilline for appellants. __________________ Rachel V. Lee, Trial Attorney, Civil Division, United States ______________ Department of Justice, with whom Stuart M. Gerson, Assistant Attorney ________________ General, United States Department of Justice, Helene M. Goldberg, ___________________ Director, Torts Branch, Civil Division, United States Department of Justice, Michael P. Iannotti, Assistant United States Attorney for the ___________________ District of Rhode Island and Lincoln C. Almond, United States Attorney _________________ for the District of Rhode Island were on brief, for appellees. ____________________ February 23, 1993 ____________________ BOWNES, Senior Circuit Judge. This case involves ____________________ plaintiffs-appellants' attempts to recover $41,448.00 in U.S. currency, which was seized by the United States Drug Enforcement Administration ("DEA") and has now been forfeited. In their civil action under 28 U.S.C. 1331 against the DEA and its agents, plaintiffs appeal two rulings by the district court. First, plaintiffs challenge the court's grant of partial summary judgment for the defendants upon its finding that plaintiffs had received constitutionally adequate notice of the administrative forfeiture proceeding. Second, plaintiffs challenge the court's dismissal of the case on the basis that, once it granted partial summary judgment on the Fifth Amendment notice claim, it no longer had jurisdiction to hear plaintiffs' Fourth Amendment claim. We affirm the decision of the district court. I. I. Background Background __________ The procedural background of this case is important and we rehearse it in detail, proceeding chronologically. On July 28, 1989, DEA agents seized $41,448.00 from the plaintiffs' then-residence located at 114 Alvin Street in Providence, Rhode Island. The attendant search was conducted without a warrant. On August 21, 1989, plaintiffs' counsel filed a motion pursuant to Fed. R. Crim. P. 41(e),1 seeking return of the currency. On September 1, Assistant U.S. Attorney Michael Iannotti objected to this motion and filed a memorandum of law which has played a focal role in the arguments before this court. In that memorandum, he informed plaintiffs and the district court that the currency was being held for administrative forfeiture pursuant to Title 21 U.S.C. 881(d) and Title 19 U.S.C. 1607. The memorandum provided the seizure number that had been assigned to the currency. The memorandum also stated that "a notice [would] be sent to all those who may have an interest in the currency," and that "publication [would] commence within the next two months." The Assistant U.S. Attorney averred that the assignment of a seizure number would permit the plaintiffs "at any time, without waiting for the DEA to take ___________ any further action, to file a claim and cost bond with the DEA thus causing the DEA to refer the matter to the U.S. Attorney for the initiation of judicial forfeiture proceedings" (emphasis in original). ____________________ 1 Fed. R. Crim. P. 41(e), Motion for Return of Property, provides in pertinent part: A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. -5- On or about September 19, the DEA sent notice of the administrative forfeiture proceeding by certified mail to 114 Alvin Street, where the currency had been seized. The notice contained required information, not included in the memorandum, concerning procedures to be followed, deadlines to be met, and the right of a petitioner to proceed in forma __ _____ pauperis in lieu of the posting of a cost bond. This notice ________ was subsequently returned to the DEA "unclaimed." The DEA made no further attempts to notify the plaintiffs or their counsel of the pending forfeiture other than by publication. On September 21, following a conference with the court pursuant to the 41(e) motion, plaintiffs sent a letter to the DEA advising it of their intention to file a claim under the Federal Tort Claims Act. The first publication notice, marking the beginning of the twenty-day period after which plaintiffs' right to file a claim and to post a cost bond would expire, appeared in the newspaper USA Today, on __________ September 27. On October 13, the district court denied the plaintiffs' 41(e) motion on equitable grounds, deferring to the administrative forfeiture proceedings. The plaintiffs' right to file a claim with the DEA expired on October 17. On November 2, the administrative forfeiture was decreed and entered. -6- On November 8, the plaintiffs, having procured money to post a cost bond, filed a formal claim with the DEA. Plaintiffs also moved for reconsideration of their 41(e) motion. On December 21, defendants objected to the motion for reconsideration and included, in their accompanying memorandum, the information that the currency had already been administratively forfeited. The court denied plaintiffs' motion as moot because the forfeiture had been completed. After learning that their property had been forfeited, plaintiffs filed a motion to vacate the forfeiture on December 29, which motion was dismissed by the court for lack of jurisdiction. Underscoring its awareness that plaintiffs had been trying to resolve this matter for several months, the court advised plaintiffs in its order that the proper method for collateral attack was a civil rights action under Title 28 U.S.C. 1331. Thereafter, plaintiffs filed a civil rights action against the DEA and its agents alleging violations of their rights under the Fifth Amendment, claiming insufficient notice of the administrative proceeding, and under the Fourth Amendment, claiming that the currency was seized in the course of a warrantless, non-consensual search. The district court initially denied defendants' motions to dismiss and for summary judgment, finding that the plaintiffs had stated a valid cause of action under 28 U.S.C. 1331, by -7- pleading violations of the Fourth and Fifth Amendments, and that sovereign immunity was waived under the Administrative Procedures Act, 5 U.S.C. 701 et seq. The court found __ ___ summary judgment inappropriate because of a dispute regarding consent in the Fourth Amendment claim, and the need for more evidence on the issue of adequate notice underlying the Fifth Amendment claim. Both parties later filed motions for partial summary judgment on the issue of the adequacy of notice. The district court, on July 15, 1991, granted partial summary judgment for the defendants on the notice issue, finding it constitutionally sufficient that the government had sent notice to the address from which the currency had been seized. The court buttressed its conclusion with the fact that plaintiffs had received the Assistant U.S. Attorney's September 1 memorandum putting them on notice that a forfeiture proceeding would ensue. Trial on the Fourth Amendment issue began on March 11. The defendants moved to dismiss the case for lack of jurisdiction. The plaintiffs moved for reconsideration of the court's grant of partial summary judgment on the notice issue. Upon deciding not to alter its grant of summary judgment, the court dismissed the case for lack of jurisdiction finding that, because the notice issue had been resolved against plaintiffs, they thereby lost the waiver of -8- sovereign immunity that had allowed the court to entertain the case in the first instance. II. II. Discussion Discussion __________ A. Notice/Due Process A. Notice/Due Process __________________ We begin by addressing plaintiffs' claim that defendants failed adequately to notify them of the administrative forfeiture proceeding. Because the district court granted defendants' motion for summary judgment on this issue, our review is plenary, and we construe all factual inferences in favor of plaintiffs. See Damaris Rivera-Ruiz ___ ___________________ v. Leonardo Gonzalez-Rivera, No. 92-1558, slip. op. at 2 (1st ________________________ Cir. Jan. 5, 1993) (citing E.H. Ashley & Co. v. Wells Fargo __________________ ___________ Alarm Servs., 907 F.2d 1274, 1277 (1st Cir. 1990)). ____________ Notice of impending forfeiture proceedings involving seizures valued at $500,000 or less is governed by Title 19 U.S.C. 1607, which provides in pertinent part: [T]he appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at -9- least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article. The regulations interpreting the publication requirement provide for publication in "a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought." 21 C.F.R. 1316.75(a) (1992). The publication notice must do the following: (1) Describe the property seized and show the motor and serial numbers, if any; (2) state the time, cause, and place of seizure; and (3) state that any person desiring to claim the property may, within 20 days from the date of first publication of the notice, file with the custodian or DEA Asset Forfeiture Section a claim to the property and a bond with satisfactory sureties in the sum of $5,000 or ten percent of the value of the claimed property whichever is lower, but not less than $250. 21 C.F.R. 1316.75(b) (1992). There is no dispute that defendants sent notice with all required information to plaintiffs' last known address, the address from which the currency was seized. There is also no dispute that defendants issued proper notice by publication. Thus, defendants met the requirements of the statute. Plaintiffs contend that defendants failed to satisfy the notice requirements of the Due Process Clause of the Fifth Amendment. Relying upon the Supreme Court's opinion in Mullane v. Central Hanover Bank & Trust Co., 339 _______ _________________________________ -10- U.S. 306, 314 (1950), plaintiffs argue that the notice in this case was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Plaintiffs do not facially challenge the notice provisions in the statute, but draw our attention to special "circumstances" affecting the question of whether the DEA's notice was so "reasonably calculated." See id. ___ ___ It is plaintiffs' position that the DEA was fully aware of their interest in the seized currency, given their pursuit of their 41(e) motion, and their letter to the DEA informing the DEA that they intended to take action under the FTCA. Plaintiffs point out that the DEA also was aware of their representation by counsel and of their counsel's identity and address.2 Once the DEA received an indication that the notice had been returned "unclaimed," plaintiffs assert, it would have been simple to ascertain from counsel their current address, as would it have been to notify their counsel directly of the pending forfeiture. Cf. Robinson v. __ ________ Hanrahan, 409 U.S. 38, 40 (1972) (per curiam) (citing Mullane ________ _______ for the proposition that notice by publication was insufficient where plaintiffs' names and addresses were known or "easily ascertainable"). ____________________ 2 Plaintiffs treat the government, the U.S. Attorney for Rhode Island and the DEA in Washington, as a single entity. -11- We find that the DEA acted reasonably on the information it had when notice was sent by mailing notice to the address from which the property was seized. We need determine only whether the DEA's duty changed in the light of its subsequent discovery that the mailed notice had been ineffective. Given plaintiffs' vigorous (although tardy) pursuit of their claim, the fact that the government had been involved in ongoing court action on the very issue of the seizure of plaintiffs' currency, the government's awareness of plaintiffs' representation by counsel, and the frowned upon treatment of forfeitures, the call is a close one. See ___ generally United States v. One 1936 Model Ford V-8 Deluxe _________ ______________ ________________________________ Coach, 307 U.S. 219, 226 (1939) ("Forfeitures are not _____ favored; they should be enforced only when within both letter and spirit of the law."). Nevertheless, Mullane counsels us _______ to consider all of the circumstances, and we find in this ___ case other pertinent factors, including the government's memorandum and the conduct of plaintiffs' counsel, which compel us to uphold the finding of the district court. For the reasons that follow, we hold that defendants met the minimum threshold requirements of due process. 1. Mullane and its Progeny 1. Mullane and its Progeny _______________________ We note at the onset that while Mullane clearly _______ contemplates inquiry into the "peculiarities" and the -12- "practicalities" of a given case, it has not generally been interpreted to require a party to make additional attempts beyond notice that is legally satisfactory at the time it is sent. See Mullane, 339 U.S. at 314-15. The Court has read ___ _______ an implicit bad faith standard into the notice inquiry, overturning notice even where formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective. See, e.g., Robinson v. Hanrahan, 409 ___ ____ ________ ________ U.S. 37 (1972) (per curiam) (in forfeiture action, notice mailed to interested party's home address was inadequate where government knew party was incarcerated awaiting trial, and where party remained in custody throughout forfeiture proceedings and did not receive notice until his release); Covey v. Town of Somers, 351 U.S. 141 (1956) (in foreclosure _____ ______________ action, notice by publication, mailing and posting was ___ inadequate where individual involved was known by the town to be mentally disabled and under the protection of a guardian). Knowledge of the likely effectiveness of the notice is measured from the moment at which the notice was sent. Virtually all of the cases relied upon by plaintiffs share the feature--missing from this case--that the government knew at the time the notice was sent that the notice was likely to be ineffective.3 See Fisher v. ___ ______ ____________________ 3 Only in one case cited by plaintiffs did the court require the DEA, absent any evidence of bad faith, to make additional attempts to notify the defendant when notice was -13- Stutman, Nos. 85-3133-MA, 85-4307-MA, 1987 U.S. Dist. LEXIS _______ 10682, at *6-7 (D. Mass. Nov. 6, 1987)(DEA sent notice of forfeiture to invalid address when they had correct address in their possession); Gutt v. United States, 641 F. Supp. ____ ______________ 603, 606 (W.D. Va. 1986) (DEA mailed notice to Gutt's hotel with knowledge that he no longer resided there and failed to apprise attorney who specifically had requested to be informed in writing); Cepulonis v. United States, 543 F. _________ ______________ Supp. 451, 452 (E.D.N.Y. 1982) (DEA sent notice to party's home address when party was incarcerated); cf. Vance v. ___ _____ United States, 676 F.2d 183, 187 (5th Cir. 1982) (notice by _____________ publication inadequate where government knew business claimant was engaged in and claimant's address); Jaekel v. ______ United States, 304 F. Supp. 993, 999 (S.D.N.Y. 1969) ______________ (government could not rest on publication notice where it knew claimant's name and address). Thus, courts are reluctant under Mullane to extend _______ a notifying party's duty beyond initial satisfactory notice. Only exceptional circumstances would compel us to so extend the DEA's duty, absent indication that it knew or should have known that the notice would be ineffective. ____________________ returned unclaimed. See Montgomery v. Scott, 802 F. Supp. ___ __________ _____ 930 (W.D.N.Y. 1992). Interestingly, the court relied upon the fact that the plaintiff was being prosecuted in a criminal action and that the DEA could have reached him through that vehicle. Unlike the case before us, in Montgomery, the claimant had no actual notice whatsoever of __________ the pendency of the forfeiture proceeding. -14- 2. Circumstances Affecting the Adequacy of the Notice 2. Circumstances Affecting the Adequacy of the Notice __________________________________________________ Rather than uncovering exceptional circumstances compelling us to find that the government had a duty over and above reasonable and technical satisfaction of the statutory requirements, we find that the damage done by the ineffective notice could and ought to have been stemmed by plaintiffs' counsel. The Assistant U.S. Attorney's memorandum to the district court objecting to plaintiffs' Rule 41(e) motion put counsel on notice that a forfeiture proceeding would ensue. Even though, as counsel for plaintiffs argued, the memorandum did not specify an exact time of publication, and thus counsel lacked a precise indication of the date from which the twenty-day period would run, he certainly had sufficient general notice of the risk that the property would be forfeited within the coming months if action were not taken.4 The statute covering forfeitures (cited in the memorandum) and the regulations interpreting it, were available to counsel. The regulations plainly explain the consequence of forfeiture in twenty days. Counsel had only to look to these sources. ____________________ 4 The Assistant U.S. Attorney's memorandum was filed on September 1, 1989. The DEA could have published notice, thereby beginning the twenty-day period during which plaintiffs could challenge the forfeiture, any time after that date. Plaintiffs' did not file a formal claim with the DEA until November 8, more than two months later. -15- We also do not credit plaintiffs' argument that the Assistant U.S. Attorney's reference to the plaintiffs' ability to initiate action "at any time," caused confusion, in effect sanctioning plaintiffs' delay. Although the memorandum might well have confused plaintiffs had it gone to them directly, it ought not to have confused their counsel. Counsel is charged with knowledge of the law, and that knowledge is imputed to plaintiffs. Moreover, in the context in which the phrase appeared, we do not find that the statement, "at any time," was deliberately misleading. The statement was part of the government's argument that the court should decline to exercise its equitable powers under Rule 41(e), because of the availability of the at-law remedy provided by the forfeiture statute and regulations. The argument pointed out the plaintiffs' ability to move under Rule 41(e) more quickly than the government could process an administrative forfeiture. The U.S. Attorney was making the point that no undue delay would be caused plaintiffs, who could go ahead and challenge the administrative proceeding without waiting, should the court decide to defer to that proceeding. In addition to putting counsel on notice of the forfeiture, the memorandum contained a seizure number, which counsel could have used to ascertain the status of the action, and to obtain from the DEA the anticipated date of -16- publication notice. Although the duty of providing notice lies plainly with the government, once the plaintiffs and their counsel were aware that notice of the forfeiture would be sent in the ensuing two months, they could have notified the DEA of their own change of address--they were in the better position as far as that information was concerned. Plaintiffs' explanation for their delay in posting the cost bond and thereby challenging the forfeiture was their difficulty in coming up with the funds to do so. It is unfortunate that plaintiffs did not receive the notice mailed by the DEA which plainly explains the right of a poor and needy claimant to proceed in forma pauperis in lieu of __ _____ ________ posting the cost bond. Once again, however, plaintiffs were represented by counsel; counsel is charged with knowledge of his clients' rights to proceed in forma pauperis, and __ _____ ________ counsel's knowledge is imputed to his clients. We are not entirely unsympathetic to plaintiffs' argument that the circumstances affecting notice were altered by the government's ongoing involvement with plaintiffs in litigation over the return of the seized property and by plaintiffs' persistent pursuit of their rights. No doubt the government could have ascertained from plaintiffs' attorney their current address. We are also troubled by the DEA's choice of publication notice in USA Today, which we do not _________ consider a particularly effective notice vehicle for -17- Providence, Rhode Island. The regulations, however, require only a publication "of general circulation in the judicial district in which the . . . forfeiture is brought," and we find no violation of due process in this regard. 21 C.F.R. 1316.75(a). The government's conduct simply did not rise to a violation of the due process clause of the Fifth Amendment. B. Dismissal for Lack of Jurisdiction B. Dismissal for Lack of Jurisdiction __________________________________ We next review the district court's dismissal of the case on the basis that it lost jurisdiction to hear the remaining Fourth Amendment claim once the notice issue was resolved against plaintiffs. This issue poses a pure question of law. Therefore, our standard of review is plenary. See Liberty Mutual Ins. Co. v. Commercial Union ___ ________________________ _________________ Ins. Co., 978 F.2d 750, 757 (1st Cir. 1992). ________ Because the plaintiffs' Fourth Amendment claim is directed at the DEA, an agency of the United States, this issue involves the United States' waiver of its sovereign immunity. Only an express waiver of sovereign immunity will give a court jurisdiction to hear a claim against the United States. Lehman v. Nakshian, 453 U.S. 156, 161 (1981). The ______ ________ Administrative Procedures Act, 5 U.S.C. 702, provides such -18- a waiver for certain forms of equitable relief.5 That waiver is, however, limited by APA, 5 U.S.C. 701. Specifically relevant to this case is 701(a)(1), which limits waiver where "statutes preclude judicial review." The issue presented is whether the forfeiture statute and the regulations implementing it, by providing an avenue for judicial relief, constitute a statute precluding review within the meaning of 701(a)(1). The district court originally obtained jurisdiction over this case due to plaintiffs' claim that constitutionally deficient notice prevented them, in the first instance, from meeting the deadlines necessary to pursue judicial relief as provided by the forfeiture statute and regulations. Whereas most challenges to forfeiture would be foreclosed by a ____________________ 5 Administrative Procedures Act, 5 U.S.C. 702, provides in pertinent part: A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought. -19- plaintiffs' failure to utilize the mechanism for obtaining judicial relief provided in the forfeiture statute and regulations, courts have entertained challenges to the adequacy of notice, reasoning that the mechanism is not available to a plaintiff who is not properly notified of the pending forfeiture. See, e.g., Marshall Leasing, Inc. v. ___ ____ _______________________ United States, 893 F.2d 1096, 1102-03 (9th Cir. 1990); Willis _____________ ______ v. United States, 787 F.2d 1089, 1092-93 (7th Cir. 1986). _____________ Once the district court found, as have we, that notice was constitutionally sufficient, it further determined that 701(a)(1) applied to deny the court jurisdiction over the remainder of the case. The court found that plaintiffs had had the means available under the forfeiture statute to take the case to a judicial forum, and that they had failed to do so. See Sarit v. Drug Enforcement Admin., 796 F. Supp. ___ _____ _______________________ 55, 59 (D.R.I. 1992) ("The forfeiture statute `clearly makes available to a claimant invoking the remedy an appropriate forum in which to test the legality of the contested seizure.'" (citation omitted)). Concluding that the forfeiture statute was a "statute" which "preclude[d] review" under 701(a)(1), because the statutory scheme provided an avenue for judicial relief, the district court dismissed the case. The Supreme Court has held that in assessing whether Congress intends to preclude judicial review, the -20- intention need not be found in the express language of the statute, but should be determined from the structure of the statutory scheme and from its objectives. See Block v. ___ _____ Community Nutrition Inst., 467 U.S. 340, 345 (1984). The __________________________ district court correctly interpreted 701(a)(1) to find that the forfeiture statute precluded judicial review in this case. Plaintiffs ask us to extend the exception for constitutionally deficient notice to hear the merits of their Fifth Amendment claim. It is their position that, even if the notice was constitutionally adequate, it still was not ________ effective. In practical terms, plaintiffs claim, they had no _________ knowledge of the deadlines for filing a cost bond. Absent a legal defect in the notice, however, we cannot correct any residual ineffectiveness if such there be, by extending jurisdiction where Congress has spoken otherwise. Once again, we are sympathetic with plaintiffs' frustrated attempts to obtain a hearing on the merits. We are, however, bound by the rule of law and the adversary process. We cannot come in, deus ex machina, and save a claim where ____ __________ notice is constitutionally sufficient and any failures in its effectiveness should have been corrected by plaintiffs' counsel. C. Equitable Jurisdiction C. Equitable Jurisdiction ______________________ -21- Plaintiffs' final request is that we reach their Fourth Amendment claim by invoking our powers of equitable jurisdiction. The government, in its brief, argued that the issue was not raised below. At oral argument, attorney for plaintiffs claimed that the issue had been briefed for the district court. We find, however, no evidence in the record that this issue had been raised before the district court. We are, therefore, precluded from entertaining it on appeal. See United States v. Curzi, 867 F.2d 36, 44 (1st Cir. 1989); ___ _____________ _____ Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. ________ ___________________ 1979). The decision of the district court is affirmed. affirmed ________ -22-