UNITED STATES of America,

v.

John D. RANDALL.

Crim. No. 96–T–052–N.

United States District Court,
M.D. Alabama.

Sept. 15, 1997.

Federal Defender, Federal Defender Middle Dist. of Alabama, Montgomery, AL, for John D. Randall.

Terry F. Moorer, U.S. Attys. Office, Montgomery, AL, for U.S.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Defendant John D. Randall—who has been convicted of receipt of child pornography in interstate commerce, 18 U.S.C.A. § 2252(a)(2)—filed a motion for the return of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.[1] In two recommendations, one entered on May 15, 1997, and the other on June 4, 1997, the United States Magistrate Judge has recommended that the court deny the motion as to those items that are already subject to a civil forfeiture proceeding.[2] This matter is now before the court on the Magistrate Judge's recommendations and Randall's objections to them.

Randall raises the following objections: (1) the Magistrate Judge erred in finding that the unclaimed certified letter sent by the government to his residence was "sufficient legal notice of the contemplated forfeiture proceedings"; (2) she erred in finding that there was sufficient proof of actual publication of a legal notice of forfeiture, and that such notice was legally sufficient as required by statute; and (3) she erred in finding that the government's delay in bringing the forfei-

ture proceedings did not violate his due-process rights under the fifth amendment to the United States Constitution.

For the reasons that follow, the court agrees with the outcome of the Magistrate Judge, though for different reasons.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

● On March 15, 1996, United States Customs Service agents, conducting an investigation of child pornography on the Internet, served a search warrant on Randall's residence. The items seized pursuant to the warrant included two computers, one computer monitor, two keyboards, computer software and discs, printer, phone, VCR, video tapes, two address books, letters and business cards, and miscellaneous computer equipment.

● On March 27, 1996, Randall was indicted for violating 18 U.S.C.A. § 2252(a)(2), which prohibits knowingly receiving visual depictions through computer or mail that "involves the use of a minor engaging in sexually explicit conduct; and ... such visual depiction is of such conduct." The indictment did not contain any counts seeking criminal forfeiture of any of Randall's property pursuant to 18 U.S.C.A. § 2253.

● Randall entered a guilty plea on May 22, 1996, pursuant to a written agreement. In the agreement, he agreed to provide assistance to the government and the government agreed to file a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C.A. § 3553(e). For several months af-

---

1. Rule 41(e) provides:
   "Motion for Return of Property. A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceed-

   ings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."

2. As to those items not subject to the civil forfeiture proceeding, the Magistrate Judge recommended that they be returned to Randall. Because no one has objected to this aspect of her recommendations, the court will order that these items be returned.

ter this agreement, Randall provided continuing assistance to the government, including meetings and undercover activity under the supervision of law enforcement agents.

● On November 1, 1996, pursuant to 18 U.S.C.A. § 2254 and 19 U.S.C.A. §§ 1595a, 1602–1625, the Customs Service initiated administrative civil forfeiture proceedings against the property seized on March 15, 1996. A Customs agent sent a certified letter to Randall's apartment address notifying him of the forfeiture proceedings. However, Randall never received notice of the proceeding, for the certified letter was returned to the Customs Service by the U.S. Postal Service as "unclaimed." Randall states that he first learned of the forfeiture proceedings from his attorney on March 6, 1997. The Customs agent also placed a notice of the forfeiture proceedings in an area newspaper on December 24, 31, 1996, and January 7, 1997.[3]

● Randall was sentenced on December 9, 1996, to home confinement for eight months and was placed on probation for five years.

● Thereafter, Randall's counsel conferred with the Assistant U.S. Attorney on several occasions concerning the return of Randall's property. The Assistant U.S. Attorney denied knowledge of any forfeiture proceedings initiated by the Customs Service and referred Randall's counsel to the Customs Service.

Randall's computer equipment and related property were forfeited to the United States in an administrative Customs Service proceeding on January 14, 1997. On this same date, Randall's counsel left telephone messages with both the Assistant U.S. Attorney and the Customs Service regarding the status of Randalls' property. However, because Randall never received notice of the civil administrative proceeding, he had no opportunity to contest the putative forfeiture by filing a claim pursuant to 19 U.S.C.A. §§ 1602–1625. Under these provisions, the Customs Service must publish notice of its intent to forfeit in a newspaper of general circulation once a week for at least three successive weeks, and must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." § 1607(a). If no party files a claim asserting an interest in the property within 20 days of the first publication, the Customs Service may declare the property forfeited. § 1609. "A declaration of forfeiture ... [has] the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." § 1609(b). However, if a proper claim is filed, the Customs Service must refer the proceeding "to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law." § 1608.

He also had no opportunity to seek remission or mitigation of the forfeiture pursuant

---

**3.** The advertisement stated in part:

"Notice is hereby given of the seizure and intent to forfeit and sell or otherwise dispose of according to law:

(1) AST computer, model 4869X25, with color monitor, valued at $1,000.00, (1) IBM computer (CPU only), model 30 286 valued at $200.00; (1) Panosonic printer, model KXP1592, valued at $200.00; (1) Sharp VCR, valued at $150.00; miscellaneous computer accessories including circuit boards and modems, valued at $300.00; (1) AT & T phone, valued at $25.00, miscellaneous VCR tapes, valued at $1,536.00, and miscellaneous floppy discs and software valued at $299.00.

The property was seized at Montgomery, Alabama and is subject to forfeiture under the provisions of title 19, United States Code, section 1595a(a), because it was used in to aid in or facilitate the importation contrary to law, namely child pornography; and under the provisions of title 18, United States Code, section 2254, because the property was used to receive, distribute, or knowingly reproduce visual depictions involving the use of a minor engaging in sexually explicit conduct. Anyone claiming an interest in the said property must appear and file with the U.S. Customs Services, Fines, Penalties and Forfeitures Officer, 150 North Royal Street, Mobile, Alabama 36602, within twenty (20) days from the date of the first publication of this notice, a claim to such property and a cost bond; otherwise, the property will be forfeited and sold or otherwise disposed of in accordance with law...."

to 19 U.S.C.A. § 1618. "The remission of forfeitures is neither a right nor a privilege, but an act of grace.... The purpose of the remission statutes is to grant the executive the power to ameliorate the potential harshness of forfeitures.... Under the statute, a decision with respect to the mitigation or remission of a forfeiture is committed to the discretion of the Secretary." *In the Matter of $67,470.00*, 901 F.2d 1540, 1543 (11th Cir. 1990).

● In February 1997, Randall's counsel sent two letters to the U.S. Attorney stating that her calls to the agent at the Customs Services had not been returned and repeating Randall's request for the return of his equipment.[4]

● The U.S. Attorney informed Randall's counsel on March 5, 1997, that he would confer with the Customs Service about the property.

● On March 6, 1997, the U.S. Attorney told Randall's counsel to contact the Customs Service again. During a phone conversation with the Customs agent on March 6, the Agent told Randall's counsel that it was the government's position that Randall's property had been forfeited.

● Randall brought this Rule 41(e) motion for return of property on April 8, 1997.

● The Magistrate Judge held a hearing on the motion on April 18, 1997, and issued her recommendation on May 15, 1997. Randall filed his objections to the recommendation on May 28, 1997. The Magistrate Judge issued a supplemental recommendation on June 4, 1997.

## II. DISCUSSION

The Customs Service has the authority to initiate forfeiture proceedings in this case under 18 U.S.C.A. § 2254 (which subjects those visual depictions prohibited in 18 U.S.C.A. § 2252 to civil forfeiture) and 19 U.S.C.A. §§ 1595a, 1602–1625 (which subjects any material used to "aid in, or to facilitate" the "transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law," § 1595a(a), to civil forfeiture).

### A.

The Magistrate Judge found that the court had jurisdiction over Randall's motion. The court cannot agree.

■ Instead, the court agrees with the government that Rule 41(e) of the Federal Rules of Criminal Procedure does not apply in actions challenging the validity of the forfeiture of property in a *civil* administrative proceeding. Here, rightly or wrongly, Randall's property has been civilly forfeited. "When property is retained pursuant to civil forfeiture, instead of for use as evidence, a Rule 41(e) motion is not available." *United States v. Watkins*, 120 F.3d 254, 255 (11th Cir.1997) (per curiam). Therefore, "[w]hen the government, in its written response to a Rule 41(e) motion, admits its position is that, by forfeiture, the movant has already permanently lost his right to the pertinent property, the government's judicial admission is enough to deprive the court of the authority to grant the Rule 41(e) motion." *Id.*

■ However, admittedly, federal courts may exercise equitable or "anomalous" jurisdiction over agency forfeiture decisions under limited circumstances. *In the Matter of $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir.1989). This jurisdiction is not statutory; rather, it vests by virtue of "the inherent authority of the court over those who are its officers," *Hunsucker v.*

---

4. In her February 26 letter to the U.S. Attorney, Randall's counsel wrote:

"Please let me know when and where Mr. Randall may retrieve his computer equipment. As I recall, you and I agreed that the government has no use or entitlement to retain Mr. Randall's equipment. Based on our discussion, I did not think that a motion to compel return of the equipment would be necessary. However, Agent Putnocky has not returned my calls and I have heard nothing from your office. If a motion to compel is necessary, I will file one."

*Phinney,* 497 F.2d 29, 32 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975),[5] including, in this instance, Customs Service agents. The decision to invoke such jurisdiction, however, is "highly discretionary and must be exercised with caution and restraint ... Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *Matter of $67,470.00,* 901 F.2d at 1544.

In *Castro,* the Eleventh Circuit delineated some of the limited circumstances in which a court may exercise equitable jurisdiction in a criminal proceeding. The court stated that the purpose of equitable jurisdiction in a criminal case is twofold: "(1) to suppress evidence prior to indictment and (2) to deter unlawful conduct of law enforcement officials through the exclusion of evidence obtained illegally." 883 F.2d at 1020. Randall's argument that he did not receive adequate notice of the forfeiture proceeding does not touch on either of the two purposes of equitable jurisdiction in criminal cases; he does not seek to suppress evidence prior to indictment, or to suppress evidence as part of any criminal proceeding, or to obtain any relief incident to a pending criminal matter. As the Eighth Circuit Court of Appeals explained in *United States v. Rapp,* 539 F.2d 1156, 1160 (1976), "A motion for return of property under Rule 41(e)[ ] 'is a method granted defendants to suppress evidence *prior* to trial. The owner of property subsequent to trial may have a common law right, ... but he has no right under Rule 41(e) after conviction." (Quoting *Bartlett v. United States,* 317 F.2d 71 (9th Cir.1963)).

■ This conclusion is reinforced in two other ways. First, Rule 54(b)(5) of the Federal Rules of Criminal Procedure provides that "These rules are not applicable to ... civil forfeiture of property for violation of a statute of the United States." "Consequently," accorded to the *Rapp* court, "Rule 41(e), Fed. R.Crim. P., cannot provide a jurisdictional basis." 539 F.2d at 1160.[6] Second, "A criminal forfeiture operates *in personam* against the defendant, serving as a penalty upon conviction. A civil forfeiture operates *in rem* against the property itself under the theory that the property is guilty of wrongdoing." *United States,* 866 F.2d 1343, 1348 n. 3 (11th Cir.1989). Here, because this proceeding is criminal, only the court's *in personam* jurisdiction has been invoked.

In conclusion, the exercise here of equitable jurisdiction in a *criminal* case, after the conviction and sentencing, concerning what is, as a result, exclusively a *civil* administrative matter is inappropriate. "[T]he proper method for recovery of property which has been subject to civil forfeiture is not the filing of a Rule 41(e) Motion, but filing a claim in the civil forfeiture action." *Castro,* 883 F.2d at 1019. "Defendant cannot use the criminal procedure device of Rule 41(e) to seek relief from a civil forfeiture proceeding." *Id.* at 1020. Randall's avenue for relief, if relief is warranted, is in a separate civil action. *Id.; Rapp,* 539 F.2d at 1161 ("The civil forfeiture and the criminal proceeding are not ancillary; they are separate and distinct. The vehicle in the instant case was not being held for evidence in the criminal action and no rational relationship exists between the two proceedings which would occasion the exercise of the court's equitable jurisdiction.").

It is true that other courts have considered the use of their equitable jurisdiction to hear challenges to administrative forfeiture proceedings. *See e.g., Robinson v. United States,* 734 F.2d 735, 738 (11th Cir.1984) (finding district court had jurisdiction); *In the Matter of the Search of William J.McCorkle,* 972 F.Supp. 1423, 1430–31

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206., 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**6.** In *Floyd v. United States,* 860 F.2d 999, 1006 (1988), the Tenth Circuit Court of Appeals stated "that a 41(e) motion may derive jurisdiction independent of any criminal action." In *Matter of $67,470.00,* 901 F.2d at 1544 n. 4, the Eleventh Circuit expressly rejected this position.

(M.D.Fla.1997) (exercising its equitable jurisdiction); *In the Matter of the Seizure of One 1983 Mercedes Benz Automobile VIN No. WDBCB20A9DB041960,* 131 F.R.D. 199, 200 (M.D.Ala.1989) (finding that "a source of equitable jurisdiction over [movant's] claim clearly, exists," but declining to exercise that jurisdiction). However, these and other cases involved civil, rather than criminal, proceedings.

### B.

Nevertheless, even assuming equitable jurisdiction to hear Randall's claims could be exercised, the court would still find in favor of the government.

### i.

Randall complains that he did not receive actual written notice of the government's initiation of civil administrative forfeiture proceedings. The issue before the court, therefore, is whether Randall's failure to receive actual written notice violates the statute governing forfeiture notification or Randall's fifth-amendment due-process rights.

█ The Customs Service must publish notice of its intent of civil administrative forfeiture in a newspaper of general circulation once a week for at least three successive weeks, and must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C.A. § 1607(a).[7] Because the statute does not require that the government provide actual notice to a person interested in the forfeiture proceeding, and because Randall does not challenge the contents of the mailed notice, the court finds that the government has met the requirements of the statute.[8]

In order to meet the fifth-amendment requirements of due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). With consideration of all the "practicalities and peculiarities of the case," this court must be satisfied that constitutional requirements of notice are met. *Id.*

In her recommendations, the Magistrate Judge found a Middle District of Georgia decision, *Coggins v. United States,* 860 F.Supp. 845 (M.D.Ga.1994), *aff'd,* 53 F.3d 1287 (11th Cir.1995) (table), to be dispositive in this matter. *Coggins* is factually similar to the case before this court. There, the plaintiff alleged that, because he did not receive notice of forfeiture mailed to his home address by registered mail, his fifth-amendment due-process rights had been violated. 860 F.Supp. at 847. The court found that the plaintiff's failure to receive the notice did not, in fact, render the notice inadequate or in violation of the statute or regulation governing notice for forfeiture proceedings. *Id.* The court stated, " 'notice that is legally satisfactory *at the time it [was] sent'* satisfies all of the process the Fifth Amendment requires." *Id.* (quoting *Sarit v. U.S. Drug Enforcement Administration,* 987 F.2d 10, 14 (1st Cir.), *cert. denied,* 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993) (emphasis in original)). "[C]ourts are reluctant under *Mullane* to extend a notifying party's duty beyond initial satisfactory notice," absent "exceptional circumstances." *Sarit,* 987 F.2d at 15.

Other courts considering the issue of adequate notice for forfeiture proceedings have

---

7. More specifically, § 1607(a) provides that the Custom Service must "cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such a manner as the Secretary of Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article."

8. Randall argued that the contents of the notice published in the Montgomery Advertiser did not meet the Customs Service's regulations regarding forfeiture notice. Because the court finds the notice sent to Randall by certified mail was adequate, the court declines to address Randall's objections regarding the legal sufficiency of the published forfeiture notice.

reached similar results. *See United States v. Hinojosa*, 120 F.3d 269, 1997 WL 415336, at *2 (9th Cir. July 24, 1997) ("That [claimant] was incarcerated at the time and may have not received actual notice, either by mail or through publication, is not legally relevant as actual notice is not required by law.") (unpublished disposition);[9] *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988) ("The proper inquiry is whether the state acted reasonably in selecting means likely to inform [the] persons affected, not whether each property owner actually received notice."), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *Pou v. United States Drug Enforcement Admin.*, 923 F.Supp. 573, 578 (S.D.N.Y.1996) ("Neither due process nor the relevant forfeiture statute requires that a forfeiture claimant actually receive timely notice of an impending forfeiture."), *aff'd*, 107 F.3d 3 (2d Cir.1997).

However, courts will readily find notice to be inadequate if the government knew or had reason to know, at the time notice was sent, that notice would be ineffective. *See, e.g., Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) (per curiam) (notice of forfeiture was ineffective where State knew property owner was incarcerated and could not get to address where notice was sent); *Covey v. Town of Somers*, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (notice of foreclosure was inadequate where town officials were aware individual was incompetent and in the care of a guardian); *United States v. Woodall*, 12 F.3d 791 (8th Cir.1993) (case remanded where movant alleged notice of forfeiture was mailed to incorrect address and government was aware of correct address).

■ Here, the Customs Service mailed a certified notice of forfeiture to Randall's correct address, as well as published notice of the forfeiture for three consecutive weeks in an area newspaper. Randall argues that this notice was inadequate because he did not receive it, and, during his frequent contact with personnel at the Customs Service and the U.S. Attorney's office, no mention of forfeiture proceedings was made, thus creating an expectation that his property would be returned. What is critical, however, is that the mail notice provided by the Custom Service was "reasonably calculated" to reach interested parties. *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. This is adequate, and this was true here. *See Weigner*, 852 F.2d at 650–51 ("Even if beneficial, means of notice beyond those reasonably calculated to reach interested parties are not required by due process . . .").

In addition, the court does not find that the facts here comport with the "exceptional circumstances" necessary "to extend a notifying party's duty beyond initial satisfactory notice." *Sarit*, 987 F.2d at 15. Indeed the contrary exists. The *Coggins* and *Sarit* courts also faulted respective claimants' counsel for not inquiring into the government's initiation of forfeiture proceedings. In *Sarit*, where the court admitted "the call is a close one," 987 F.2d at 14, the U.S. Attorney filed a memorandum of law in response to the claimants' Rule 41(e) motion in which he informed the court and claimants' counsel that the property was being held for administrative forfeiture proceedings, notice of which would be sent to those interested in the property within the next two months. *Id.* at 12. This notice was mailed to the claimants, as well as published for three weeks, but the claimants did not receive their notification. *Id.* The court found that "the damage done by the ineffective notice could and ought to have been stemmed by plaintiffs' counsel" as there was "sufficient general notice of the risk that the property would be forfeited within the coming months if action were not taken." 987 F.2d at 15. Similarly in *Coggins,* the court found that "counsel should have known that a phone call to the agency would have discovered the status of the forfeiture proceeding." 860 F.Supp. at

**9.** *But cf. Armendariz–Mata v. U.S. Dep't of Justice, DEA,* 82 F.3d 679, 683 (5th Cir.1996) (notice of forfeiture sent to a prisoner and returned unclaimed was inadequate notice when "that party is known to be in jail and easily located by DEA in the jail or determined not to be there."), *cert. denied,* — U.S. ——, 117 S.Ct. 317, 136 L.Ed.2d 232 (1996).

848. Similarly here, Randall offers no explanation as to why he made no inquiry at all as to the status of his property between March 1996, when the property was seized, and December 1996, when he was sentenced. His counsel should have known, after such a lengthy period of time, in particular, after Randall had pled guilty in May 1996 and the property had little to no evidentiary value, that the property was subject to being civilly forfeited. An inquiry by him or his counsel to the Customs Service during this time could have uncovered the status of the property. Only after the property was actually forfeited in January 1997 did his counsel step up her efforts to inquire about the property, but by then it was too late.

In conclusion, considering all of the circumstances of the case, as *Mullane* requires, this court finds the government's actions concerning the mailed notice of forfeiture were reasonable and did not violate Randall's fifth-amendment due-process rights.

ii.

■ Randall also contends that the government's eight-month delay in initiating forfeiture proceedings after the property was seized violated his fifth-amendment right to due process. In *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), the Supreme Court set out a four-part balancing test to determine whether a delay in forfeiture proceedings violated the property owner's due-process rights. These factors include (1) "the length of the delay," (2) "the reason the Government assigns to justify the delay," (3) "the claimant's assertion of the right to a judicial hearing," and (4) "whether the claimant has been prejudiced by the delay." 461 U.S. at 565, 568–69, 103 S.Ct. at 2012, 2014–15. Applying this balancing test, the court finds that the eight-month delay in forfeiture proceedings did not violate Randall's due process rights.

The Eleventh Circuit has found that delays of, and in excess of, eight months do not constitute a violation of due process when the government is conducting criminal investiga-tions. *United States v. Premises Located at Route 13,* 946 F.2d 749, 755 (11th Cir.1991) ("We do not find that an eleven months' delay constitutes a violation of the due process clause, especially when the proffered reason is an ongoing criminal investigation."); *United States v. Bissell,* 866 F.2d 1343 (11th Cir.1989) (delay of eight months between pre-trial restraint of assets and forfeiture proceeding did not violate due process). In Randall's case, the government used Randall's property as evidence in an investigation of the propagation of child pornography; the forfeiture proceedings were delayed until the property's evidentiary use was complete. The property, consisting of computer and video equipment and multiple tapes and discs, required technical skill and time to investigate thoroughly. The court finds the length of delay and the government's reasons for delay to be legitimate and not impinging upon Randall's due process rights.

Randall has not demonstrated that he either asserted his right to his property or that he would suffer prejudice as a result of the delay, such as the loss of witnesses or other important evidence. Randall's arguments concerning the third and fourth prongs of the *$8,850* test, namely but for the inadequate notice he would have asserted his right to his property and that this lack of notice prevented him from mitigating the loss of his property, address Randall's concerns regarding the notice of the forfeiture, and not the effect of the delay itself. Without this showing, the court concludes that the eight-month delay did not violate Randall's fifth-amendment due-process rights.

## III. CONCLUSION

Upon considering Randall's objections to the Magistrate Judge's recommendations, the court overrules the objections and accepts the Magistrate Judge's recommendations. An appropriate judgment will be entered.