Arabaxhi v. Drug Enforcement Admin.   CV-97-322-M   09/16/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Gjergji Arabaxhi,
        Plaintiff,

        v.                                    Civil No. 97-322-M

Thomas A. Constantine, Administrator,
Drug Enforcement Administration,
        Defendant.


**O R D E R**


In this civil suit plaintiff, Gjergji Arabaxhi, seeks to challenge an administrative forfeiture of a substantial sum of cash by the United States Drug Enforcement Administration (DEA) in connection with his wife's arrest for dealing crack cocaine. Before the court is defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff objects, and has himself filed a motion for partial summary judgment.


**Background**[1]

1.   The Seizure

In the early morning of June 21, 1995, DEA and other law enforcement agents entered plaintiff's residence as part of "Operation Streetsweeper," a combined state and federal effort aimed at curbing illegal drug activity. Plaintiff's wife, Drita

---

[1] The government flatly denies most of the critical factual allegations made by Arabaxhi. For purposes of ruling on the pending motion to dismiss, however, the court has taken the facts pled by Arabaxhi as true.

Arabaxhi, who had been suspected of selling crack cocaine, was arrested. Agents seized over $20,000 in currency hidden in various places in her bedroom.

Plaintiff, a citizen of Albania who resides in New Hampshire, contends that most of the seized currency belonged to him. He explains that on May 9, 1995, he was involved in a motor vehicle accident in Manchester, New Hampshire, which led to a state court order requiring him to pay restitution. He claims that his savings at the time ($6,000.00) were not sufficient to pay the sum owed, so he arranged to borrow money from his father, who was still living in Albania.

Plaintiff went to Albania to visit his father and discuss the loan. Before leaving, he says that he withdrew his savings from a joint bank account shared with his wife (apparently to prevent his wife from taking the funds). He gave $1,000.00 in cash to his wife and says he hid the remaining $5,000.00 in their apartment. Plaintiff then went to Albania, where he says he obtained $15,000.00 in United States currency from his father. Upon returning to this country, on June 20, 1995, the night before Mrs. Arabaxhi's arrest, plaintiff says he declared his possession of the currency to the United States Customs Service at Logan International Airport, Boston, Massachusetts.

Thus, according to plaintiff, when the agents arrived at his residence the next morning, the $15,000.00 in cash they found in a pair of pants lying on the bed was in fact the money loaned to him by his father for an innocent purpose; the $5,000.00 they

2

found hidden in a boot was the money he had withdrawn from his savings account and hidden from his wife; and the $1,000.00 found in an envelope inside a purse belonging to Mrs. Arabaxhi was the money he had given her before he left for Albania. (The envelope contained an additional $240.00, allegedly the remainder of a public assistance payment obtained by Mrs. Arabaxhi while plaintiff was in Albania.)

The DEA sent plaintiff a "notice of seizure" dated July 24, 1995. The notice advised that the "date of first publication" would be August 2, 1995, and clearly informed plaintiff that $21,240.00 had been seized from Drita Arabaxhi, his wife, and that the DEA had begun administrative forfeiture procedures. The notice further informed plaintiff that he could challenge the forfeiture in either of two ways. First, he could petition the DEA for the remission or mitigation of the forfeiture. Alternatively, he could file a claim and cost bond (or affidavit of indigency), after which the matter would be administratively terminated and referred to the U.S. Attorney's office for initiation of civil forfeiture proceedings in the federal court. Deadlines were given for exercising each option.

The parties necessarily agree that the notice sent by the DEA satisfied requirements found in the relevant statute and administrative regulations, see 19 U.S.C. § 1607; 21 C.F.R. § 1316.75, and that the notice was in fact received by plaintiff at his residence. The notice clearly provided that any correspondence concerning the forfeiture should be submitted to

3

the DEA Asset Forfeiture Section in Arlington, Virginia. Accordingly, Arabaxhi was required to file an administrative petition with the DEA for remission of the forfeiture by <u>August 27, 1995</u> (30 days after July 28, the date he <u>received</u> the notice). Alternatively, he was required to file a claim for judicial relief with the DEA, and post a costs bond (or declaration of indigency), by <u>August 22, 1995</u> (20 days after August 2, the date of first publication) if he wished to <u>judicially</u> contest the seizure and forfeiture of the currency.

Plaintiff did not file either an administrative petition or a claim for judicial relief within the prescribed time limits. Consequently, the seized currency was administratively forfeited on September 27, 1995.[2]

2.   <u>Plaintiff's Efforts to Contest the Seizure</u>

Plaintiff says he at least attempted to timely exercise his right to contest the forfeiture, but was thwarted by his lack of fluency in the English language and by DEA employees who would not accept his claim or assist him in pursuing it. Plaintiff begins his story by relating that his wife's criminal attorney advised him to wait until after the charge against her had been resolved before challenging the seizure — questionable advice to follow from plaintiff's perspective, but advice that he says nevertheless led him to delay efforts to recover the seized

---

[2]   Two days prior to the actual forfeiture, the government moved to dismiss the indictment against Drita Arabaxhi.

4

funds.  On August 21, 1995, plaintiff learned that his wife's criminal case would indeed be dismissed, but that his wife's attorney would not assist him in recovering the seized funds, due to a potential conflict of interest.  On August 22, 1995, allegedly following additional advice from his wife's counsel, plaintiff visited the United States Attorney's Office in Concord, New Hampshire, and asked for assistance in recovering the seized currency.  He claims that someone in the U.S. Attorney's office told him that the currency was in the custody of the Manchester Police Department, which also participated in Operation Streetsweeper (though by that time plaintiff of course had received rather clear written notice that DEA had the funds and was in the process of administratively forfeiting them).  On August 23, 1995 (after the time for judicially contesting the forfeiture had expired) plaintiff visited the police department, only to be referred to the offices of the DEA in Boston.  Plaintiff says he also visited the Boston DEA office, but was referred back to the Manchester Police Department.

Plaintiff further alleges that he then obtained the assistance of an interpreter, who drafted a hand-written letter for him in English, requesting an extension of time to claim the seized currency.  A separate note was included which read, "Please help this man put this letter in the proper hands.  Thank you."  On August 25, 1995, plaintiff presented the letter and note to the DEA office in Concord, New Hampshire, together with the Notice, and indicated that he needed help.  The DEA allegedly

5

demanded $3,000, apparently as a cost bond, which the plaintiff was unable to pay due to indigence. Plaintiff says the DEA did not mention, or assist him in executing, an affidavit of indigency in lieu of posting a cost bond (of course, the time for invoking judicial review had already expired on August 22). Instead, the DEA allegedly referred plaintiff to the Concord office of the United States Attorney. There, plaintiff spoke with a person allegedly fluent in Greek, a language in which plaintiff had some facility. Plaintiff says that he clearly stated his claim, but the Greek-speaking person merely accused his wife of being a drug dealer and turned him away.

Plaintiff subsequently retained his current counsel, Gordon Blakeney, Esq. Attorney Blakeney asserts that several months later, on January 24, 1996, he called a DEA staff attorney who ostensibly granted an extension of time in which to file a petition for remission, after hearing Mr. Blakeney's rendition of the mitigating circumstances. The DEA attorney to whom he spoke, Senior Attorney Vicki Rashid (formerly Vicki Curcio), confirms that she spoke to Attorney Blakeney on January 24, 1996, and that she agreed to a thirty day extension from that date to file a petition for remission. However, she states that by so doing she intended simply to extend running time limits, but did not purport to reopen any limitations periods which had already expired, and indeed had no such statutory or regulatory authority.

6

Nevertheless, plaintiff did file an administrative petition with DEA within thirty days of the apparent extension,[3] asserting his ownership of the currency and seeking remission of the forfeiture. Notwithstanding her apparent previous authorization, however, Attorney Rashid determined that the petition had been erroneously accepted and denied it as untimely. From Attorney Rashid's affidavit, it appears that since the deadline for filing had passed well before plaintiff's counsel ever sought an extension, and the seized currency had already been declared forfeited back on September 27, 1995, she believed she was without authority to grant Arabaxhi an extension of time to file an administrative petition for remission. (It appears that Mr. Blakeney's January phone call also occurred outside the ninety day time limit established for filing a petition for the restoration of proceeds, an avenue of relief available after forfeiture has occurred. See 21 C.F.R. § 1316.80.)

On May 13, 1996, the DEA received a motion for reconsideration from Attorney Blakeney. The DEA responded on August 20, 1996, again asserting the untimeliness of plaintiff's administrative petition. However, the DEA further advised plaintiff that even if the DEA had accepted and ruled on his untimely petition for remission, the petition would have been denied on the merits. The letter explained that an undercover

---

[3] Attorney Blakeney's affidavit (document no. 8) makes it plain that whatever the scope of the extension of time at issue, it related only to filing an administrative petition for remission (see e.g. ¶ 5: ". . . it is [for a] remission of forfeiture, like a pardon, basically.").

7

police officer purchased cocaine from Mrs. Arabaxhi on five separate occasions, and each time she retrieved the narcotics from the bedroom. Noting that all of the seized currency was removed from various places in that very bedroom, the letter concluded that there was "a substantial relationship . . . between the seized currency and controlled substances, [indicating] probable cause to believe the currency was furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. § 881(a)(6)." The DEA also explained, plausibly, why plaintiff's contrary assertions regarding the source of the funds lacked credibility.

## Discussion

When reviewing a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed. R. Civ. P., the court construes the complaint liberally, treating all well-pleaded facts as true and giving the plaintiff the benefit of all reasonable inferences. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). Nevertheless, the party invoking the court's subject matter jurisdiction carries the burden of proving its existence. Id.

Before considering plaintiff's position, it is necessary to carefully differentiate between administrative and judicial forfeitures. Civil forfeiture of property or money furnished in exchange for or used in connection with illegal activity related to controlled substances is governed by 21 U.S.C. § 881, a

8

section of the Comprehensive Drug Abuse Prevention and Control Act (the "Drug Control Act"). Section 881 directs that such forfeiture procedures conform to the customs laws, 19 U.S.C. § 1600, et seq.

1.  Judicial Relief

The customs laws provide that "property worth $500,000 or less is subject to administrative forfeiture without judicial involvement." United States v. Giraldo, 45 F.3d 509, 510 (1st Cir. 1995)(citing 19 U.S.C. § 1607). An aggrieved individual is, however, afforded a narrow window of time — within twenty days of the date the government first publishes notice of the intended forfeiture — in which to seek judicial relief by filing a claim with the agency (here, the DEA) and a cost bond of not less than $250 or, in lieu of a cost bond, a declaration of indigence. See 19 U.S.C. § 1608. "The filing of the claim and the bond stops the administrative process and requires the seizing agency to hand the matter over to the United States Attorney for the commencement of a judicial forfeiture proceeding." Giraldo, at 510-511 (citing 19 U.S.C. § 1608). In a judicial proceeding, the agency is required to go forward and show probable cause for the forfeiture. If successful in that effort, the burden of proof then shifts to the claimant to show that the seized property belongs to him or her and is not drug related. Boero v. Drug Enforcement Administration, 111 F.3d 301, 304 (2d Cir. 1997).

2. Administrative Relief

If a claimant fails, or chooses not to follow the procedure that would entitle him or her to judicial review, the seizing agency "shall declare the [property] forfeited." 19 U.S.C. § 1609(a). See also 21 C.F.R. § 1316.77(a). That declaration has the same force and effect as a final decree of forfeiture in a judicial proceeding in a federal district court, and title to the seized property is then deemed vested in the United States. 19 U.S.C. § 1609(b). Here, the property (cash) was declared forfeited on September 27, 1995.

A claimant may administratively oppose the forfeiture, however, by filing a petition for remission or mitigation with the seizing agency, also known as a petition for "pardon" or "grace." This procedure is "an administrative prelude to the formal forfeiture proceeding, wherein a valid forfeiture is presumed." United States v. Morgan, 84 F.3d 765, 767 n.3 (5th Cir. 1996); 28 C.F.R. § 9.5. "Unlike the claimant who files a claim [seeking judicial relief] and posts a cost bond, a petitioner seeking remission or mitigation of a forfeiture does not contest the legitimacy of the forfeiture. Rather, a petition for remission or mitigation is a means of ameliorating the harshness of forfeiture when mitigating circumstances exist." Morgan, 84 F.3d at 767 n.3 (emphasis added).

A petition for remission must be received within thirty days of receipt of the notice of seizure. 21 C.F.R. § 1316.80(a). If a petition is not received within thirty days, the property is

10

either placed in official service or sold as soon as it is forfeited. 21 C.F.R. § 1316.80(a).[4] If a petition is received, the DEA asset forfeiture department normally requests an investigation and then forwards the petition, along with a report of investigation, to the Administrator of the DEA. 21 C.F.R. § 1316.81. Following an administrative forfeiture, an aggrieved claimant may file a petition for review of the final agency decision with the Court of Appeals in the relevant jurisdiction, 21 U.S.C. § 877, but that review is generally limited to whether the agency followed the proper procedural safeguards before declaring the property forfeit. Scarabin v. Drug Enforcement Administration, 919 F.2d 337, 338 (5th Cir. 1990).

3.   The Court's Subject Matter Jurisdiction Over Plaintiff's Claim

Arabaxhi simply did not comply with any of the procedural requirements that would have entitled him to judicial review of the merits of the DEA's forfeiture decision. He did not file a claim and post a cost bond (or assert indigency) with the DEA within the allotted 20-day period, and he received constitutionally adequate notice of the requirement.

His counsel contends, however, that this court nevertheless has subject matter jurisdiction over his claims, either under the

_____

[4] Within 90 days of the date on which the property is placed into official use, a claimant may still file a petition for restoration of the value of the property. 21 C.F.R. § 1316.80(b).

11

Administrative Procedures Act or pursuant to the court's "inherent equitable powers."

### A.    The APA

Contrary to plaintiff's assertions, it is unmistakably clear that the APA does not confer subject matter jurisdiction on this court under these circumstances. The plaintiff has sued an agency of the United States government, but he neither asserts nor identifies any explicit waiver of sovereign immunity. The APA itself provides no waiver of sovereign immunity when a controlling statute precludes judicial review of the matter at hand. 5 U.S.C. § 701. And, the Court of Appeals for the First Circuit has determined that the forfeiture section of the Drug Control Act and its implementing regulations, described above, constitute "a statute precluding review" of forfeiture actions within the meaning of that subsection. Sarit v. United States Drug Enforcement Administration, 987 F.2d 10, 17 (1st Cir. 1993).

The only exception noted in Sarit suggests that a federal court may exercise preliminary jurisdiction to determine whether the notice of forfeiture received by a petitioner was adequate in light of due process requirements. Id. But once a district court finds the notice to be constitutionally sufficient, § 701(a)(1) applies to deprive the court of subject matter jurisdiction over the remainder of the case. Id.

Plaintiff concedes, as he must, that the notice he actually received from the DEA met all statutory and regulatory

12

requirements and plainly informed him of the relevant deadlines and where to send his claim. The notice he received also satisfied due process concerns, even given his difficulties with the English language. See Toure v. United States, 24 F.3d 444 (2d Cir. 1994). A straightforward application of Sarit, then, requires this court to acknowledge its lack of subject matter jurisdiction.

In an effort to bypass Sarit, however, plaintiff's counsel argues that this court is surely authorized by the APA to at least review the DEA's denial of plaintiff's administrative petition for remission of forfeiture.[5] Plaintiff's petition for remission was unquestionably filed with the DEA late, but perhaps arguably as allowed by agency sufferance, within its discretion.[6] Putting that timeliness issue aside for the moment, however, it is still plain that remission of forfeiture is a matter committed to the sound discretion of the seizing agency. See Averhart v.

---

[5] Plaintiff's counsel seems to argue that because DEA Senior Attorney Vicki Rashid, acting pursuant to inherent administrative authority, granted an extension of time, all deadlines set out in the notice of forfeiture received by plaintiff were effectively nullified (presumably nunc pro tunc).

[6] Though perhaps a more compelling argument, plaintiff does not seem to assert that the DEA should have treated his appearance at DEA offices, and his presentation of the letter requesting help, as the equivalent of filing a formal petition for remission See e.g. United States v. One 1987 Jeep Wrangler Auto, 972 F.2d 472, 481 (2d Cir. 1992). Plaintiff received the DEA's Notice on July 28 and, accepting his allegations, within thirty days (August 25) he personally appeared at DEA offices and made his claim to the currency known. Nevertheless, even if plaintiff had advanced (and prevailed on) that argument, he would be entitled to no more than that which he has already received: administrative consideration of his petition on the merits.

<u>United States</u>, 901 F.2d 1540, 1543 (11th Cir. 1990).
Accordingly, except under carefully defined and very narrow circumstances, federal courts lack jurisdiction to review the merits of an administrative forfeiture decision, even one that constitutes an abuse of discretion. <u>See</u> <u>Averhart</u>, 901 F.2d at 1543-44.

A federal court might exercise preliminary jurisdiction to review the <u>procedural</u> aspects of a denial of a petition for remission. For example, other circuits have determined that a federal court may exercise jurisdiction to review the procedural safeguards afforded by a seizing agency, particularly when the agency "does not even consider a request that it exercise its discretion." <u>Averhart v. United States</u>, 901 F.2d 1540, 1544 (11th Cir. 1990); <u>cf.</u> <u>Scarabin v. Drug Enforcement Administration</u>, 919 F.2d 337, 338 (5th Cir. 1990) (federal court may review agency's refusal to exercise jurisdiction over a claim as well as the nature of any procedural safeguards, but is precluded from reviewing the merits). On the other hand, when the government provides a detailed explanation for its denial of a petition for remission, including an account of the relevant evidence supporting a probable cause finding (as it did here) it has conclusively established that it did consider the request. <u>See</u> <u>Averhart</u>, 901 F.3d at 1544; <u>One 1977 Volvo 242 DL v. United States of America</u>, 650 F.2d 660, 662 (5th Cir. 1981) (noting that where DEA had provided plaintiff with reasons for the denial of her petition for remission, federal court was without

14

jurisdiction).  Cf. Scarabin, 919 F.2d at 339 (remanding case to DEA because, despite opportunity, it failed to review merits of petitioner's claim).  But those potential exceptions do not apply here.

Although the DEA formally denied plaintiff's petition on timeliness grounds (and so arguably refused to exercise its discretion), for all practical purposes the agency did consider the petition on the merits, and fully and plausibly explained in detail why the petition would have been denied even if it had been accepted as timely.  In very real terms then, plaintiff has been afforded full administrative review on the merits, and has obtained a detailed explanation as to why his petition, even if timely, would be denied.  The court does not have jurisdiction to consider the merits of the DEA's administrative decision to forfeit the currency at issue, and there can be little doubt what that decision on the merits is (or would be).

### B.    Equitable Jurisdiction

Undaunted, plaintiff asserts that this court should still exercise subject matter jurisdiction and grant substantive relief, based upon its "inherent equitable power" to correct erroneous administrative actions.  To be sure, a federal court may invoke equitable jurisdiction in "exceptional cases where equity demands intervention."  Averhart, 901 F.2d at 1544.  However, the court's equitable powers must be exercised with caution and restraint, and usually should not be employed when a

15

petitioner has an adequate remedy at law.  <u>Id.</u>, at 1545.  <u>Cf.</u>
<u>United States v. Clagett</u>, 3 F.3d 1355, 1356 n.1 (9th Cir.
1993)(observing that a remedy at law does not become inadequate
merely because a claimant failed to invoke it).  Plaintiff in
this case had, but failed to properly invoke, an available
<u>judicial</u> remedy despite having received full and adequate notice
of both the available remedy and how to invoke it.  Given that
failure, it would be particularly inappropriate for the court to
exercise equitable jurisdiction over the DEA's administrative
decisions in this case for that reason alone.

In any event, plaintiff's case does not present the kind of
exceptional circumstances warranting equitable intervention.  In
light of the asserted facts, and Attorney Rashid's earlier
"authorization," the DEA probably could have entertained
plaintiff's untimely administrative petition on the merits,
perhaps finding that although plaintiff's attempt in August of
1995 to invoke administrative remedies was technically deficient,
he demonstrated sufficient interest in the property and in
asserting his rights that the DEA field offices should have been
more helpful and cooperative, and should have accepted and
considered the petition.  (Again, the court is accepting
plaintiff's factual allegations as true.)  But, the reality here
is that although plaintiff's petition was formally denied as
untimely, upon reconsideration the DEA <u>did</u> fully review its
substance and concluded that it was without merit.

16

The DEA advised plaintiff, in writing, that even if the petition had been timely filed and accepted for consideration, it still would have been denied on the merits, and the DEA explained why. The explanation was both rational and reasonable, but this court does not review the merits of administrative decisions to deny petitions for remission, and, obviously, remanding the matter to the DEA to require more "formal" consideration of the petition on its merits would be pointless, given that the DEA has already effectively and, for all practical purposes, made a determination upon the merits and has provided plaintiff with a sufficiently detailed explanation of that decision. This is not a case in which an agency of the government is depriving the rightful owner of property that should not have been forfeited in the first place based on a technical "gotcha," and without any meaningful consideration of the merits of the owner's claim or the equities of the situation. See Scarabin, 919 F.2d at 339.


## Conclusion

Judicial review of plaintiff's objection to forfeiture is not available, because the court is without subject matter jurisdiction. The court is also without jurisdiction under the APA to entertain his claims, and declines to exercise "equitable jurisdiction" under the circumstances of this case. Furthermore, remand for formal administrative review by the DEA is denied as pointless since, even assuming DEA's procedural error in deeming plaintiff's administrative petition untimely, the DEA's de facto

17

consideration of the petition on the merits, and its reasonable and thorough explanations for the discretionary decision to deny relief, effectively provided plaintiff full consideration on the merits.

For the foregoing reasons, the court grants defendant's motion to dismiss (document no. 4) and denies as moot plaintiff's motion for partial summary judgment (document no. 5). The clerk of court shall close this case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 16, 1998

cc:  Gordon R. Blakeney, Jr., Esq.
     Jean B. Weld, Esq.

18