John **COLLETTE**, Plaintiff,

v.

DRUG ENFORCEMENT ADMINIS-TRATION; United States Marshal's Service; and United States of America, Defendants.

No. A00–0254CVRRB.

United States District Court, D. Alaska.

Sept. 13, 2005.

---

## ORDER REGARDING FORFEITURES

BEISTLINE, District Judge.

## I. INTRODUCTION

Before the Court is John Collette ("Collette") who claims that because he did not receive notice for 21 items administratively forfeited by the Government, those items should be returned to him. The Drug Enforcement Administration ("DEA"), United States Marshal's Service, and the United States of America oppose and argue that the notices sent to Collette were adequate under the Due Process Clause of the Constitution.

The Court held an evidentiary hearing from May 10–19, 2004, on the issue of whether Collette was properly notified of 21 separate administrative asset forfeiture proceedings.[1] Both parties presented witnesses and exhibits during the hearing. Based on the exhibits and testimony received, the Court, having considered the weight of the evidence and the credibility of the witnesses, hereby enters the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### 1. 1966 Helio Courier Aircraft

On November 20, 1992, the DEA[2] sent a Notice of Seizure form letter ("Forfeiture Notice") pertaining to the 1966 Helio Aircraft, via certified mail, addressed to "Collette, John L inmate # 273909F, c/o Cook Inlet PF, 1300 W 4th, Anchorage AK 99507." (GE[3] A–5; TR[4] 3–42; TR 3–77 through 3–79).

The DEA received nothing in return or by way of response to the Forfeiture Notice. (TR 3–78).

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the 1966 Helio Aircraft, via certified mail, addressed to "Collette, John L, Happy Creek Greenhouse SR20087A, Fairbanks, AK 99701." (GE A–7; TR 3–78 through 3–79).

The Forfeiture Notice was not delivered and it returned to the DEA marked "Returned to Sender, Insufficient Address, Fairbanks, AK 99701." (GE A–6; TR 3–79 through 3–80).

On January 22, 1993, the DEA sent a Forfeiture Notice pertaining to a different asset, via certified mail, addressed to "John Collette, c/o Dattan D. Scott, Esq, 1400 W. Benson Blvd, Ste 110, Anchorage, AK 99503." (GE K–6; TR 6–117 through 6–118).

Scott Dattan's law office refused to accept delivery of the Forfeiture Notice. (GE K–7; TR 6–117 through 6–118).

On January 27, 1993, DEA attorney John Cummings spoke with Dattan, who identified himself as Collette's court-appointed criminal defense attorney. Dattan advised Cummings that he did not want any more Forfeiture Notices addressed to Collette sent to his office. Dattan advised Cummings that Collette's address was, "2960 Ester Dome Road, Fairbanks, Alaska 99709." (GE LL; TR 3–13 through 3–17).

---

1. The evidentiary hearing was held before Magistrate Judge Miller in Fairbanks, Alaska. Magistrate Judge Miller resigned before completing a report and recommendation that would have contained his findings of fact and conclusions of law. Judge Singleton, before whom this case was originally assigned, granted both parties' request that the Court review the transcript of the evidentiary hearing and make whatever credibility determinations are necessary on the basis of the total record rather than having a new evidentiary hearing. Clerk's Docket No. 192. This Court has thoroughly reviewed the transcript and all other relevant pleadings.

2. DEA refers to the office in Washington, D.C.

3. "GE" refers to Government Exhibit.

4. "TR" refers to Evidentiary Hearing Transcript.

Cummings then instructed the DEA staff to send "20 day letters" to Collette at the 2960 Ester Dome Road address. A "20 day letter" is a Forfeiture Notice which the DEA sends after obtaining information that the addresses the DEA sent initial Forfeiture Notices to were somehow defective or inadequate. (GE LL; TR 3–17 through 3–18).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the 1966 Helio Courier Aircraft, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, AK 99709." (GE A–4, TR 3–73 through 3–79).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Return Receipt Card ("Green Card") was returned to the DEA. (GE A–1; TR 6–5 through 6–10).

The statutorily-required publication of DEA forfeiture proceedings involving the 1966 Helio Courier Aircraft occurred in USA Today on December 2, 9, and 16, 1992. (GE A–3).

The DEA issued its Aircraft Forfeiture Declaration for the 1966 Helio Courier Aircraft on November 5, 1993. (GE A–2; TR 3–71).

## 2. 1988 Polaris Snowmobile

On January 11, 1993, the DEA sent a Forfeiture Notice pertaining to the 1988 Polaris Snowmobile, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE B–8; TR 6–87).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No Mail Receptacle." (GE B–7; TR 6–87 through 6–88).

On January 11, 1993, the DEA sent a Forfeiture Notice pertaining to the 1988 Polaris Snowmobile, via certified mail, addressed to, "Collette, John L inmate # 273909F, c/o Cook Inlet PF, 1300 W 4th, Anchorage AK 99507." (GE B–6; TR 6–87).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Unknown." (GE B–5; TR 3–105 through 3–107).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the 1988 Polaris Snowmobile, via certified mail, addressed to "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska 99709." (GE B–3; TR 3–102 through 3–104).

The 20 day letter was not delivered and it returned to the DEA, apparently marked "unclaimed." (GE B–2; TR 3–102 through 3–104).

The statutorily-required publication of DEA forfeiture proceedings involving the 1988 Polaris Snowmobile occurred in USA Today on January 20 and 27 and February 3, 1993. (GE B–4).

The DEA issued its Declaration of Forfeiture for the 1988 Polaris Snowmobile on April 19, 1993 (GE B–1).

## 3. Marijuana Grow Equipment

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "Collette, John L inmate # 273909F, c/o Cook Inlet PF, 1300 W 4th, Anchorage AK 99507." (GE C–1; TR 3–116 through 3–117).

On November 30, 1992, the Forfeiture Notice was delivered to the jail and signed for by Sergeant Rodgers. The Green Card signed by Sergeant Rodgers was returned to the DEA. (GE C–3; TR 3–116 through 3–117; TR 3–188 through 3–198).

On January 13, 1993, the DEA sent a 20 day letter pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "John Collette, Star Route 20087A, Fairbanks, AK 99701." (GE C–4; TR 3–117 through 3–118).

The 20 day letter was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks AK 99701, Star Route Numbers Are No Longer Valid." (GE C–5; TR 3–117 through 3–118).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "Collette, 2960 Ester Dome Rd, Fairbanks, Alaska 99709." (GE C–6; TR 3–118 through 3–119; TR 6–93).

On March 17, 1993, the 20 day letter was returned to the DEA, marked "Unclaimed," after the United States Postal Service ("USPS") made successive attempts to deliver it on March 1, 6, and 16, 1993. (GE C–7; TR 3–118).

The statutorily-required publication of DEA forfeiture proceedings involving the Marijuana Grow Equipment occurred in USA Today on December 2, 9, and 16, 1992. (GE C–Suppl.).

The DEA issued its Declaration of Forfeiture for the Marijuana Grow Equipment on April 9, 1993. (GE C–8).

### 4. Marijuana Grow Equipment

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "Collette, John IN # 273909F, c/o Cook Inlet PF, 1300 E. 4th Ave, Anchorage, AK 99501." (GE D–3; TR 3–119 through 3–20).

On November 30, 1992, the Forfeiture Notice was delivered to the jail and signed for by Sergeant Rodgers. The Green Card signed by Sergeant Rodgers was returned to the DEA. (GE D–4; TR 3–119; TR 3–188 through 3–198).

On January 13, 1993, the DEA sent a 20 day letter pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "John Collette, Star Route 20087A, Fairbanks, AK 99701." (GE D–5; TR 3–120).

The 20 day letter was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks AK 99701, Star Route Numbers Are No Longer Valid." (GE D–6; TR 3–120).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the Marijuana Grow Equipment, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE D–7; TR 3–120 through 3–121).

On March 17, 1993, the 20 day letter was returned to the DEA, marked "Unclaimed," after the USPS made successive attempts to deliver it on March 1, 6, and 16, 1993. (GE D–8; TR 3–121 through 3–126).

The statutorily-required publication of DEA forfeiture proceedings involving the Marijuana Grow Equipment occurred in USA Today on December 2, 9, and 16, 1992. (GE D–Suppl.).

The DEA issued its Declaration of Forfeiture for the Marijuana Grow Equipment on April 9, 1993. (GE D–9).

### 5. 1984 Audi Quattro Automobile

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the 1984 Audi Quattro Automobile, via certified mail, addressed to, "Collette, John Inmate# 273909F, c/o Cook Inlet Jail, 1300 E 4th, Anchorage, AK 99501." (GE E–3; TR 3–126 through 3–127).

On November 30, 1992, the Forfeiture Notice was delivered to the jail and signed for by Sergeant Rodgers. The Green Card signed by Sergeant Rodgers was returned to the DEA. (GE E–4; TR 3–126 through 3–127; TR 3–188 through 3–199).

On January 13, 1993, the DEA sent a 20 day letter pertaining to the 1984 Audi Quattro Automobile, via certified mail, addressed to, "John Collette, Star Route

20087A, Fairbanks, AK 99701." (GE E–7; TR 3–128; TR 6–99 through 6–100).

The 20 day letter was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks AK 99701, Star Route Numbers Are No Longer Valid." (GE E–8; TR 3–128).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the 1984 Audi Quattro Automobile, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE E–11; TR 3–128; TR 6–101 through 6–102).

In March of 1993, the 20 day letter was returned to the DEA, marked "Unclaimed," after the USPS made successive attempts to deliver it in March of 1993. (GE E–12; TR 3–128).

The statutorily-required publication of DEA forfeiture proceedings involving the 1984 Audi Quattro Automobile occurred in USA Today on December 2, 9, and 16, 1992. (GE E–Suppl.).

The DEA issued its Declaration of Forfeiture for the 1984 Audi Quattro Automobile on April 9, 1993. (GE E–16).

### 6. 1984 Volkswagen Quantum Automobile

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the 1984 Volkswagen Quantum Automobile, via certified mail, addressed to, "Collette, John In # 273909F, c/o Cook Inlet Jail, 1300 E 4th, Anchorage, AK 99513." (GE F–3; TR 6–103 through 6–106).

On November 30, 1992, the Forfeiture Notice was delivered to the jail and signed for by then-employee of the jail, Vina Lewis. The Green Card signed by Vina Lewis was returned to the DEA. (TR 3–130, TR 6–103 through 6–106; TR 3–210 through 3–214).

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the 1984

Volkswagen Quantum Automobile, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE F–1; TR 3–129 through 3–130).

The Forfeiture Notice was not delivered and it returned to the DEA for unknown reasons. (GE F–2; TR 3–129 through 3–130).

On January 13, 1993, the DEA sent a 20 day letter pertaining to the 1984 Volkswagen Quantum Automobile, via certified mail, addressed to, "John Collette, Star Route 20087A, Fairbanks, AK 99701." (GE F–5; TR 3–130; TR 6–106).

The 20 day letter was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Numbers are no longer valid." (GE F–6; TR 3–130).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the 1984 Volkswagen Quantum Automobile, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE F–7; TR 3–130).

The 20 day letter was returned to the DEA, marked "Unclaimed." (GE F–8; TR 3–130).

The statutorily-required publication of DEA forfeiture proceedings involving the 1984 Volkswagen Quantum Automobile occurred in USA Today on December 2, 9, and 16, 1992. (GE F–Suppl.).

The DEA issued its Declaration of Forfeiture for the 1984 Volkswagen Quantum Automobile on April 9, 1993. (GE F–9).

### 7. Yamaha 40 HP Outboard Motor

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the Yamaha 40 HP Outboard Motor, via certified mail, addressed to, "Collette, John, c/o Happy Creek Nursery, SR20087A, Fair-

banks, AK 99701." (GE G–3; TR 6–107 through 6–108).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Numbers are no longer valid." (GE G–4; TR 6–107 through 6–108).

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the Yamaha 40 HP Outboard Motor, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE G–1; TR 6–107).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE G–2; TR 6–107).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the Yamaha 40 HP Outboard Motor, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE G–10; TR 6–108).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE G–11; TR 6–108).

The statutorily-required publication of DEA forfeiture proceedings involving the Yamaha 40 HP Outboard Motor occurred in USA Today on December 9, 16, and 23, 1992. (GE G–Suppl.).

The DEA issued the Declaration of Forfeiture for the Yamaha 40 HP Outboard Motor on March 19, 1993. (GE G–17).

### 8. Lincoln Electronic Linkwelder Arc Welder

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the Lincoln Electric Linkwelder Arc Welder, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE H–8; TR 6–109).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE H–9; TR 6–109).

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the Lincoln Electric Linkwelder Arc Welder, via certified mail, addressed to, "Collette, John, c/o Happy Creek Nursery, SR20087A, Fairbanks, AK 99701." (GE H–10; TR 6–109 through 6–110).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE H–11; TR 6–110).

On February 2, 1993, the DEA sent a 20 day letter pertaining to the Lincoln Electric Linkwelder Arc Welder, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE H–12; TR 6–110 through 6–111).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE H–13; TR 6–110 through 6–111).

The statutorily-required publication of DEA forfeiture proceedings involving the Lincoln Electric Linkwelder Arc Welder occurred in USA Today on December 9, 16, and 23, 1992. (GE H–Suppl.).

The DEA issued the Declaration of Forfeiture for the Lincoln Electric Linkwelder Arc Welder on March 19, 1993. (GE H–14).

### 9. 1987 Polaris Snowmobile

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the 1987 Polaris Snowmobile, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE I–1; TR 6–111).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE I–2; TR 6–111).

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the 1987 Polaris Snowmobile, via certified mail, addressed to, "Collette, John, c/o Happy Creek Nursery, SR20087A, Fairbanks, AK 99701." (GE I–3; TR 6–111).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE I–4; TR 6–111).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the 1987 Polaris Snowmobile, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE I–7; TR 6–111 through 6–113).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE I–8; TR 6–111 through 6–113).

The statutorily-required publication of DEA forfeiture proceedings involving the 1987 Polaris Snowmobile occurred in USA Today on December 9, 16, and 23, 1992. (GE I–Suppl.).

The DEA issued the Declaration of Forfeiture for the 1987 Polaris Snowmobile on March 19, 1993. (GE I–9).

### 10. $13,000.00 United States Currency

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the $13,000.00 United States Currency, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE J–4; TR 6–113).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE J–4A; TR 6–113 through 6–116).

On January 14, 1993, the DEA sent a Forfeiture Notice pertaining to the $13,000.00 United States Currency, via certified mail, addressed to, "John Collette, SR20087A, Fairbanks, AK 99701." (GE J–5; TR 6–113 through 6–116).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE J–2).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the $13,000.00 United States Currency, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE J–3; TR 6–115 through 6–116).

The DEA received nothing in return or by way of response to the 20 day letter. (GE J–1 through J–10; TR 6–115 through 6–116).

The statutorily-required publication of DEA forfeiture proceedings involving the $13,000.00 United States Currency occurred in USA Today on December 9, 16, and 23, 1992. (GE J–Suppl.).

The DEA issued the Declaration of Forfeiture for the $13,000.00 United States Currency on April 9, 1993. (GE J–1).

### 11. Bank Account—Value $10,378.74

On December 31, 1992, the DEA sent a Forfeiture Notice pertaining to the Bank Account—Value $10,378.74, via certified mail, addressed to, "Collette, John c/o Happy Creek Greenhouses, 3221 Ester Dome Rd, Fairbanks, AK 99707." (GE K–1; TR 6–116).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE K–2; TR 6–116).

On December 31, 1992, the DEA sent a Forfeiture Notice pertaining to the Bank Account—Value $10,378.74, via certified

mail, addressed to, "Collette, John, SR20087A, Fairbanks, AK 99701." (GE K–3; TR 6–116 through 6–117).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE K–4; TR 6–116 through 6–117).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the Bank Account—Value $10,378.74, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE K–10; TR 6–118).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE K–11; TR 6–118).

The statutorily-required publication of DEA forfeiture proceedings involving the Bank Account—Value $10,378.74 occurred in USA Today on January 13, 20, and 27, 1993. (GE K–Suppl.).

The DEA issued the Declaration of Forfeiture for the Bank Account—Value $10,378.74 on March 19, 1993. (GE K–12).

### 12. 1982 Kubota Tractor

On December 14, 1992, the DEA sent a Forfeiture Notice pertaining to the 1982 Kubota Tractor, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE L–2; TR 6–119).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE L–3; TR 6–119).

On December 14, 1992, the DEA sent a Forfeiture Notice pertaining to the 1982 Kubota Tractor, via certified mail, addressed to, "Collette, John, c/o Happy Creek Nursery, SR20087A, Fairbanks, AK 99701." (GE L–4; TR 6–116 through 6–119).

On December 23, 1992, the Forfeiture Notice was delivered and signed by "John Collette." The Green Card was returned to the DEA. (GE L–5; TR 6–119). Even though Collette denies signing the Green Card and alleges forgery, there is a lack of credible evidence suggesting that this signature is anything but what it appears to be, Collette's signature. (TR 8–92 through 8–95). While no other Forfeiture Notice sent to the Star Route address reached Collette, the Court disagrees that this raises any sort of inference of forgery or other impropriety by any government agency. Rather, a witness from USPS testified that it was possible for mail sent to a Star Route address to reach its intended recipient in 1992, and the Court finds that is what happened. (TR 4–138 through 4–142).

On January 29, 1993, the DEA sent a 20 day letter pertaining to the 1982 Kubota Tractor, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Road, Fairbanks, Alaska, 99709." (GE L–11; TR 6–119).

The DEA received nothing in return or by way of response to the 20 day letter. (GE L–1 through L–14; TR 6–119).

The statutorily-required publication of DEA forfeiture proceedings involving the 1982 Kubota Tractor occurred in USA Today on December 23 and 30, 1992 and January 6, 1993. (GE L–Suppl.).

The DEA issued the Declaration of Forfeiture for the 1982 Kubota Tractor on March 12, 1993. (GE L–1).

### 13. 1988 Glassair III Aircraft

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the 1988 Glassair III Aircraft, via certified mail, addressed to, "Collette, John L, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE M–1; TR 6–119 through 6–120).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE M–2; TR 6–119).

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the 1988 Glassair III Aircraft, via certified mail, addressed to, "Collette, John L, SR20087A, Fairbanks, AK 99701." (GE M–3; TR 6–119).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE M–4; TR 6–119).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the 1988 Glassair III Aircraft, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE M–5; TR 6–123 through 6–124).

The 20 day letter was delivered and the Green Card was returned, unsigned, to the DEA. (GE M–6; TR 6–13 through 6–17; TR 6–124).

The statutorily-required publication of DEA forfeiture proceedings involving the 1988 Glassair III Aircraft occurred in USA Today on December 9, 16, and 23, 1992 (GE M–Suppl.).

The DEA issued the Aircraft Forfeiture Declaration for the 1988 Glassair III Aircraft on November 5, 1993. (GE M–7).

### 14. 25 and 7.5 HP Mercury Outboard Motors

On December 31, 1992, the DEA sent a Forfeiture Notice pertaining to the 25 and 7.5 HP Mercury Outboard Motors, via certified mail, addressed to, "Collette, John L, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE M–8; TR 6–125 through 6–128).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Re-

turned to Sender, No mail receptacle." (GE M–9; TR 6–125 through 6–128).

On February 19, 1993, the DEA sent a 20 day letter pertaining to the 25 and 7.5 HP Mercury Outboard Motors, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd., Fairbanks, Alaska, 99709." (GE N–1; TR 6–125 through 6–129).

The 20 day letter was returned to the DEA, marked "Unclaimed," after the USPS made successive attempts to deliver it on March 1, 6, and an illegible third date in March of 1993. (GE N–2; TR 6–128 through 6–129).

The statutorily-required publication of DEA forfeiture proceedings involving the 25 and 7.5 HP Mercury Outboard Motors occurred in USA Today on January 13, 20, and 27, 1993. (GE N–Suppl.).

The DEA issued the Declaration of Forfeiture for the 25 and 7.5 HP Mercury Outboard Motors Aircraft on April 2, 1993. (GE N–3).

### 15. Rigid Pipe Threading Machine

On December 7, 1992, the DEA sent a Forfeiture Notice pertaining to the Rigid Pipe Threading Machine, via certified mail, addressed to, "Collette, John L, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE O–1; TR 6–130).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE O–2; TR 6–130).

On February 2, 1993, the DEA sent a 20 day letter pertaining to the Rigid Pipe Threading Machine, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE O–6; TR 6–130; TR 6–150 through 6–154).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the

name "Karen Brown." The Green Card was returned to the DEA. (GE O–7; TR 6–130; TR 6–150 through 6–154).

The statutorily-required publication of DEA forfeiture proceedings involving the Rigid Pipe Threading Machine occurred in USA Today on December 16, 23, and 30, 1992. (GE O–Suppl.).

The DEA issued the Declaration of Forfeiture for the Rigid Pipe Threading Machine on March 19, 1993. (GE O–13).

### 16. Achilles Rubber Raft

On December 7, 1992, the DEA sent a Forfeiture Notice pertaining to the Achilles Ribber Raft, via certified mail, addressed to, "Collette, John L, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE P–1; TR 6–130 through 6–131).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE P–2; TR 6–130 through 6–131).

On February 2, 1993, the DEA sent a 20 day letter pertaining to the Achilles Rubber Raft, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE P–5; TR 6–131).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE P–6; TR 6–131).

The statutorily-required publication of DEA forfeiture proceedings involving the Achilles Rubber Raft occurred in USA Today on December 16, 23, and 30, 1992. (GE P–Suppl.).

The DEA issued the Declaration of Forfeiture for the Achilles Rubber Raft on March 19, 1993. (GE P–12).

### 17. Apple Macintosh II Computer System

On November 30, 1992, the DEA sent a Forfeiture Notice pertaining to the Apple Macintosh II Computer System, via certified mail, addressed to, "Collette, John, 3221 Ester Dome Rd, Fairbanks, AK 99709." (GE Q–1; TR 6–131).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE Q–2; TR 6–131).

On January 14, 1993, the DEA sent a 20 day letter pertaining to the Apple Macintosh II Computer System, via certified mail, addressed to, "John Collette, Star Route 20087A, Fairbanks, AK 99701." (GE Q–3; TR 6–131).

The 20 day letter was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE Q–4; TR 6–131).

On February 23, 1993, the DEA sent a 20 day letter pertaining to the Apple Macintosh II Computer System, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE Q–5; TR 6–131).

The 20 day letter was not delivered and it returned to the DEA, marked "Unclaimed," after the USPS made successive attempts to deliver it on March 1, 6, and 16, 1993. (GE Q–6; TR 6–131).

The statutorily-required publication of DEA forfeiture proceedings involving the Apple Macintosh II Computer System occurred in USA Today on December 9, 16, and 23, 1992 (GE Q–Suppl.).

The DEA issued the Declaration of Forfeiture for the Apple Macintosh II Computer System on April 9, 1993. (GE Q–7).

### 18. 1968 International V–200 Dump Truck

On December 14, 1992, the DEA sent a Forfeiture Notice pertaining to the 1968 International V–200 Dump Truck, via certified mail, addressed to, "Collette, John L, SR20087A, Fairbanks, AK 99701." (GE R–1; TR 6–131).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE R–2; TR 6–131).

On January 29, 1993, the DEA sent a 20 day letter pertaining to the 1968 International V–200 Dump Truck, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Road, Fairbanks, Alaska, 99709." (GE R–3; TR 6–131 through 6–132).

The DEA received nothing in return or by way of response to the 20 day letter. (GE R–1 through R–9; TR 6–131 through 6–132).

The statutorily-required publication of DEA forfeiture proceedings involving the 1968 International V–200 Dump Truck occurred in USA Today on December 23 and 30, 1992 and January 6, 1993. (GE R–Suppl.).

The DEA issued the Declaration of Forfeiture for the 1968 International V–200 Dump Truck on March 12, 1993. (GE R–9).

### 19. Garmin Global Positioning System

On December 7, 1992, the DEA sent a Forfeiture Notice pertaining to the Garmin Global Positioning System, via certified mail, addressed to, "Collette, John L, 3221 Ester Dome Rd, Fairbanks, AK 99701." (GE S–1; TR 6–132).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, No mail receptacle." (GE S–2; TR 6–132).

On February 3, 1993, the DEA sent a 20 day letter pertaining to the Garmin Global Positioning System, via certified mail, addressed to, "John Collette, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE S–3; TR 6–132).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE S–4; TR 6–132).

The statutorily-required publication of DEA forfeiture proceedings involving the Garmin Global Positioning System occurred in USA Today on December 16, 23, and 30, 1992 (GE S–Suppl.).

The DEA issued the Declaration of Forfeiture for the Garmin Global Positioning System on March 19, 1993. (GE S–5).

### 20. Bank Account—Value $7,500.00

On February 8, 1993, the DEA sent a Forfeiture Notice pertaining to the Bank Account—Value $7,500.00, via certified mail, addressed to, "Collette, John, SR 20087A, Fairbanks, AK 99701." (GE T–3).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE T–4).

On February 2, 1993, the DEA sent a 20 day letter pertaining to the Bank Account—Value $7,500.00, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE T–1; TR 6–132).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE T–2; TR 6–132).

The statutorily-required publication of DEA forfeiture proceedings involving the Bank Account—Value $7,500.00 occurred in USA Today on February 17 and 24 and March 3, 1993. (GE T–Suppl.).

The DEA issued the Declaration of Forfeiture for the Bank Account—Value $7,500.00 on March 26, 1993. (GE T–16).

### 21. Bank Account—Value $11,880.00

On November 20, 1992, the DEA sent a Forfeiture Notice pertaining to the Bank Account—Value $11,880.00, via certified mail, addressed to, "Collette, John, 3221 EsterDome Rd, Fairbanks No Star Borough, AK 99709." (GE U–9; TR 6–135).

The DEA received nothing in return or by way of response to the Forfeiture Notice. (GE U–1 through U–17; TR 6–135).

On an undetermined date, the DEA sent a Forfeiture Notice pertaining to the Bank Account—Value $11,880.00, via certified mail, addressed to John Collette at his Star Route address (GE U–5).

The Forfeiture Notice was not delivered and it returned to the DEA, marked "Returned to Sender, Fairbanks, AK 99701, Star Route Addresses are No Longer Valid." (GE U–5).

On February 8, 1993, the DEA sent a 20 day letter pertaining to the Bank Account—Value $11,880.00, via certified mail, addressed to, "Collette, John, 2960 Ester Dome Rd, Fairbanks, Alaska, 99709." (GE U–1; TR 6–135).

On March 1, 1993, the 20 day letter was delivered and signed by someone with the name "Karen Brown." The Green Card was returned to the DEA. (GE U–2; TR 6–135).

The statutorily-required publication of DEA forfeiture proceedings involving the Bank Account—Value $11,880.00 occurred in USA Today on February 17 and 24 and March 3, 1993. (GE U–Suppl.).

The DEA issued the Declaration of Forfeiture for the Bank Account—Value $11,880.00 on April 23, 1993. (GE U–16).

### III. CONCLUSIONS OF LAW

 Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."[5] To satisfy due process, however, it is not necessary that an individual receive actual notice of an administrative forfeiture.[6] Due process "does not require ... heroic efforts by the Government" to "effectuate notice of an administrative forfeiture."[7] It only requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8] "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[9] Thus, while it is possible that Collette never received actual notice of the forfeiture actions for some of the forfeited items, forfeiture may still be permitted under the law.

### 1. Notices sent to Cook Inlet Pre-Trial Facility

In *Dusenbery v. United States*, the Supreme Court of the United States addressed the issue of "what the Due Process Clause requires of the United States when it seeks to provide notice to a federal inmate of its intention to forfeit property

---

5. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

6. *Dusenbery v. United States*, 534 U.S. 161, 171, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).

7. *Id.* at 170, 122 S.Ct. 694.

8. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

9. *Id.* at 315, 70 S.Ct. 652.

in which the inmate appears to have an interest." [10] In *Dusenbery,* the government sent written notice to the prison where the defendant was incarcerated when it initiated administrative forfeiture proceedings against some of the defendant's property.[11] The government received no response to the notice and declared the seized property administratively forfeited.[12] Nearly five years later, the defendant moved, pursuant to Rule 41(e), for the return of the seized property.[13] In support of that motion, the defendant argued, *inter alia,* that he never received notice of the administrative forfeiture proceedings.[14]

The Supreme Court concluded that due process did not require actual notice, but only notice "reasonably calculated under all circumstances" to apprise defendant of the pendency of the forfeiture.[15] The Supreme Court then concluded that the government met its burden of showing that the procedures within the prison for accepting, logging and delivering certified mail addressed to inmates comported with due process, notwithstanding defendant's claim that he did not receive actual notice of the forfeiture.[16] The prison procedures involved the following: (1) the government sent the written notice by "certified mail addressed to petitioner at the correctional facility where he was incarcerated;" (2) prison mailroom staff traveled to the city post office every day to obtain all inmate mail; (3) prison staff signed for all certified mail before leaving the post office; (4) once the mail was transported to the facility, each piece of certified mail was entered in a logbook maintained in the mailroom; (5) a member of the inmate's Unit Team signed for the certified mail to acknowledge its receipt before removing it from the mailroom; and (6) either a Unit Team member or another staff member distributed the mail to the inmate during the institution's mail call.[17]

Here, the law concerning notices sent to inmates only applies to the following forfeited items: (1) the 1966 Helio Aircraft; (2) the 1988 Polaris Snowmobile; (3) the Marijuana Grow Equipment; (4) the second set of Marijuana Grow Equipment; (5) the 1984 Audi Quattro; and (6) the 1984 Volkswagen Quantum. Regarding the first two items, the notices sent to the jail were insufficient by themselves to apprise Collette of the forfeiture actions.[18]

■ However, for the other four items, the Government has shown that its efforts to provide notice of the forfeiture of these items comported with the due process requirements. The government sent notice to Collette at the Cook Inlet Pre–Trial Facility, the correctional facility where he was confined, by certified mail, return receipt requested. Before the staff at Cook

---

**10.** 534 U.S. at 167, 122 S.Ct. 694.

**11.** *Id.* at 164, 122 S.Ct. 694.

**12.** *Id.*

**13.** *Id.* at 164–65, 122 S.Ct. 694.

**14.** *Id.* at 169, 122 S.Ct. 694.

**15.** *Id.* at 170–71, 122 S.Ct. 694.

**16.** *Id.* at 169–73, 122 S.Ct. 694.

**17.** *Id.* at 168–69, 122 S.Ct. 694.

**18.** First, for the Forfeiture Notice sent to the jail regarding the Helio Aircraft, there is no evidence that any staff member signed the certified mail receipt. While in *Dusenbery,* the DEA also received no response to the notice, there was testimony from an officer in the mailroom that he signed the certified mail receipt. *Id.* at 165, 122 S.Ct. 694. Second, for the Forfeiture Notice sent to the jail regarding the Polaris Snowmobile, this notice was returned to the DEA, marked "Returned to Sender, Unknown." Thus, the DEA was obligated to make further efforts. *United States v. Ritchie,* 342 F.3d 903, 911 (9th Cir. 2003).

Inlet Jail signed for the certified mail, the staff checked the jail roster to make sure the addressee was at the facility.[19]

The staff then followed separate procedures depending on whether the certified mail was identified as "legal mail" through its return address or markings of "confidential." Mail identified as legal mail was treated with more precautions than mail not so identified.[20] However, because there are no logbooks and the Green Cards returned to the DEA do not identify how the certified mail was marked, it is not known whether the envelopes containing the notices were treated as legal mail. However, if the procedures for collecting and distributing non-legal mail are adequate under *Dusenbery*, then either way, due process is satisfied.

According to the Cook Inlet Pre–Trial Facility staff members who testified and the Standard Operating Procedures[21] used in 1992, the following procedures were in place for handling incoming non-legal inmate mail: (1) the staff checked that the inmate was still at the jail; (2) the mail was divided into modules based on where the inmate was housed; and (3) then each module's basket of mail was

delivered.[22] While there were no procedures to ensure that the notice was in fact delivered to Collette, neither were such procedures in place at the prison concerned in *Dusenbery*.[23] Even though these mail procedures were less rigorous than in *Dusenbery*, the procedures set forth in that decision were not the minimum required and all circumstances surrounding notice in a forfeiture action must be considered.

Here, it is significant that the Forfeiture Notices sent to the jail were not the only efforts by the Government to apprise Collette of the forfeiture actions for these four items. For each item, the Government also sent Forfeiture Notices to the Star Route address and to the 2960 Ester Dome address provided by Collette's criminal attorney.[24] Thus, under all of the circumstances, Collette was provided sufficient notice under the Due Process Clause for these four items.

### 2. Forfeiture Notices sent to 2960 Ester Dome Road

▮ When a Forfeiture Notice is mailed to a person not incarcerated, "[a]n elementary and fundamental requirement

---

19. TR 3–191 through 3–205.

20. Among other requirements for legal mail, all legal mail was logged into a "logbook." TR 3–191 through 3–192. However, despite efforts by the Government, the logbooks from the time of Collette's incarceration are no longer available. Clerk's Docket No. 203 at 1. Thus, it is not known whether Collette's mail was logged.

21. *Id.* at Ex. 1.

22. Collette argues that the testimony of two Cook Inlet Pre–Trial Facility employees were inconsistent regarding the logging and opening of certified mail. Clerk's Docket No. 204 at 2. However, to the extent that there were minor discrepancies between the employee's memories of procedures from over a decade ago, the Court finds that all discrepancies

solely pertained to the treatment of mail identified as "legal mail." As the Court is assuming that Collette's mail was not treated as such, such discrepancies are of no concern and do not reduce the credibility of either employee.

23. *See Dusenbery v. United States,* 534 U.S. 161, 174, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (Ginsberg, J., dissenting) (noting that the jail staff had no knowledge of whether the notice was in fact delivered to the inmate).

24. The notices sent to the Star Route address were returned to the DEA. The notices sent to 2960 Ester Dome Road were also returned to the DEA after unsuccessful attempts to deliver the notices. However, these notices contributed to the reasonable efforts made by the Government, in addition to the successful notice sent to the Cook Inlet Pre–Trial Facility.

of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." [25] If the initial forfeiture notice is returned undelivered to the government, the government "must make reasonable additional efforts to provide personal notice." [26] However, "what additional efforts are reasonable will depend on the circumstances of the particular case." [27]

Initially, the DEA sent a series of Forfeiture Notices to the Star Route address and the 3221 Ester Dome Road address.[28] Most of these notices were returned to the DEA.[29] The notices sent to the Star Route address were returned because of "Insufficient Address." The notices sent to the 3221 Ester Dome Road address were returned because of "No Mail Receptacle."

On January 27, 1993, a DEA attorney spoke with Scott Dattan, Collette's criminal defense attorney. Dattan advised the DEA attorney that Collette's address was the 2960 Ester Dome address. The DEA proceeded to send fifteen notices to this address.

On March 1, 1993, ten of the Forfeiture Notices sent to Collette at the 2960 Ester Dome Road address were signed for by "Karen Brown." [30] In the briefing and at oral argument, much time was spent regarding the identity of Karen Brown. The Court finds that she was not employed by a government agency, but it is unknown whether she was a specific member of the public or whether the name was used as an alias. Despite the troubling nature of not knowing the identity of the signatory, the Court does not find her identity necessary to its analysis. *The question before the Court is whether notice was "reasonably calculated under all the circumstances to apprise petitioner of the pendency of the [ ] forfeiture," and not whether petitioner actually received the forfeiture notices.*

Before concluding whether the notices sent to 2960 Ester Dome Road were reasonably calculated to apprise Collette of the forfeiture actions, the Court must con-

---

25. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

26. *United States v. Ritchie*, 342 F.3d 903, 911 (9th Cir.2003).

27. *Id.*

28. The items at issue for these Forfeiture Notices include: the 1966 Helio Aircraft; the 1988 Polaris Snowmobile; the Yamaha 40 HP Outboard Motor; the Lincoln Electric Linkwelder Arc Welder; the 1987 Polaris Snowmobile; the $13,000 in U.S. Currency; the 25 and 7.5 HP Mercury Outboard Motors; the Bank account valued at $10,378.74; the 1988 Glassair III Aircraft; the 1982 Kubota Tractor; the Rigid Pipe Threading Machine; the Achilles Rubber Raft; the Apple Macintosh II Computer System; the 1968 International V-200 Dump Truck; the Garmin Global Positioning System; the Bank account valued at $7,500.00; and the Bank account valued at $11,880.00.

29. The only notice not returned to the DEA pertained to the 1982 Kubota Tractor. This notice was addressed to, "Collette, John, c/o Happy Creek Nursery, SR20087A, Fairbanks, AK 99701." The Green Card returned to the DEA bore the signature of a "John Collette." While Collette denies signing the Green Card, the Court already found that this was Collette's signature. Thus, for this item, Collette had actual notice and the due process requirements were met for forfeiting this item.

30. These notices concerned the following items: the 1966 Helio Aircraft; the Yamaha 40 HP Outboard Motor; the Lincoln Electric Linkwelder Arc Welder; the 1987 Polaris Snowmobile; the Bank Account valued at $10,278.74; the Rigid Pipe Threading Machine; the Achilles Rubber Raft; the Garmin Global Positioning System; the Bank Account valued at $7,500.00; and the Bank Account valued at $11,880.00.

sider who had control of the mailbox at this address. On October 14, 1992, the U.S. Marshals arrested the real property known as 2960 Ester Dome Road, including the business known as Happy Creek Greenhouse.[31] As a result, the U.S. Marshals were required to maintain and care for this property.[32] To do so, the U.S. Marshals determined that a post office box should be rented to receive business mail.[33] On November 4, 1992, the U.S. Marshals rented a post office box at the College Branch Station in Fairbanks.[34] The U.S. Marshals received two keys to the box from the post office.[35] Around that same time, someone from the U.S. Marshals submitted a change of address form for all mail addressed to the Happy Creek Greenhouse at 2960 Ester Dome Road to be rerouted to the post office box.[36]

The purpose of the change of address form was to send all business mail to the post office box and all personal mail to the mailbox located at 2960 Ester Dome Road. However, there was evidence that this system did not work perfectly. David Stutz, who managed the Happy Creek Greenhouse for the U.S. Marshals and was responsible for checking the College Station post office box, testified that there were occasions where the box contained mail addressed specifically to John Collette, and not to the business.[37] When he found a piece of mail addressed to Collette personally, he turned it over to the U.S. Mar-

shals.[38] Additionally, U.S. Marshal Goffena testified that Happy Creek Greenhouse mail was found in the 2960 Ester Dome Road mailbox.[39] Further, the U.S. Marshals controlled the 2960 Ester Dome Road mailbox. When personal mail was received at this mailbox, the Greenhouse managers were supposed to give the mail to Collette's then-wife.[40] The testimony conflicts on whether this occurred. While it is now obvious that this address was not the ideal avenue to reach Collette, determining whether notices sent to this address were reasonable efforts depends on whether the DEA knew or should have known that the 2960 Ester Dome Road mailbox was controlled by the U.S. Marshals.

█ To obtain addresses for forfeiture notices, the DEA relied on its local field offices because the DEA office that sent the forfeiture notices is located in Washington, D.C.[41] If a notice letter was returned to the DEA, the Washington, D.C., DEA office would request a better address from the local field office.[42] This process would continue until the postal service stopped returning the Forfeiture Notices or the field offices reported that there were no other addresses available.[43] If the Forfeiture Notice is not returned by the postal service to the DEA headquarters, the DEA deems the address good. Here, none of the letters mailed to the 2960 Ester Dome Road address before Febru-

---

31. Clerk's Docket No. 203 at Ex. 2 at ¶ 5.

32. *Id.* at ¶ 6.

33. *Id.* at ¶ 7.

34. *Id.* at ¶ 8.

35. *Id.* One key was provided to the Marshals' business manager(s) and one key was kept in the Marshals' Fairbanks Office vault. *Id.* at ¶ 10.

36. *Id.*

37. TR 4–80 through 4–81.

38. *Id.*

39. TR 6–185 through 6–191.

40. TR 6–188.

41. TR 3–45 through 3–54.

42. *Id.*

43. TR 3–46.

ary 4, 1993, were returned by the postal service to the DEA headquarters. Rather, they were either signed for by Karen Brown, not returned to the DEA, or the green cards returned to the DEA unsigned. None of these three outcomes would serve to alert the DEA headquarters that the 2960 address was not a good address for notifying Collette of the forfeitures. Thus, the additional notices sent to this address before February 4, 1993, were reasonable additional efforts comporting with the requirements of the due process clause. It is immaterial that Collette was back in jail by the time the notices arrived in Alaska. The relevant time concerns the date the DEA mailed the notices, and not the date they were received.[44]

For the following items, the government met its requirements in attempting to notify Collette of the forfeiture actions. First, for the 1966 Helio Aircraft, the DEA sent one notice to the jail and received no response back, one notice to the Star Route address that was returned to sender, and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Second, for the Yamaha 40 HP Outboard Motor, the DEA sent one notice to the Star Route address that was returned to sender, one notice to the 3221 Ester Dome Road address that was returned to sender, and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Third, for the Lincoln Electric Arc Welder, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender, one notice to the Star Route address that was returned to sender, and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Fourth, for the 1987 Polaris Snowmobile, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender, one notice to the Star Route address that was returned to sender, and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Fifth, for the Bank Account valued at $10,378.74, the DEA sent one notice to the Star Route address that was returned to sender, one notice to the 3221 Ester Dome Road address that was returned to sender, and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Sixth, for the 1988 Glassair III Aircraft, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender, one notice to the Star Route address that was returned to sender, and one notice to the 2960 Ester Dome Road address and the Green Card was returned unsigned to the DEA.

Seventh, for the Rigid Pipe Threading Machine, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender and one notice to the 2960 Ester Dome Road address that was signed for by Karen Brown.

Eighth, for the Achilles Rubber Raft, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender and one notice to the 2960 Ester Dome Road address that was signed for by Karen Brown.

Ninth, for the 1968 International V–200 Dump Truck, the DEA sent one notice to the Star Route address that was returned to sender and one notice to the 2960 Ester Dome Road address where the DEA re-

---

**44.** *See Sarit v. U.S. Drug Enforcement Admin.,* 987 F.2d 10, 14 (1st Cir.1993) ("Knowledge of the likely effectiveness of the notice is mea- sured from the moment at which the notice was sent.").

ceived nothing in return or by way of response.

Tenth, for the Garmin Global Positioning System, the DEA sent one notice to the 3221 Ester Dome Road address that was returned to sender and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

Eleventh, for the Bank Account valued at $7,500.00, the DEA sent one notice to the Star Route address that was returned to sender and one notice to the 2960 Ester Dome Road address that was signed by Karen Brown.

For notices mailed to 2960 Ester Dome Road address after February 4, 1993, Collette argues that this address was not reasonable because he was an inmate when they were mailed. It is undisputed that Collette was released from jail from December 16, 1992 through February 4, 1993.[45] Collette was again incarcerated from February 4 through March 18, 1993.[46] On March 18, Collette was again released on bail and so remained until he fled the jurisdiction on May 8, 1993.[47] The notices mailed to the 2960 Ester Dome Road address were mailed on January 29, February 2, February 3, February 8, February 19, and February 23 of 1993. Thus, for the first three dates, the DEA mailed the notices when Collette was released on bail. While the letters may not have reached Collette until after he was again incarcerated, as already discussed, the address was reasonable when they were sent.

For the latter three mailings, they were sent to the 2960 Ester Dome Road address after Collette was jailed for violating his bail requirements.[48] However, the notice pertaining to the Bank Account valued at $11,880.00 was one of the notices signed by Karen Brown on March 1. Even though it was mailed after Collette was jailed, there is nothing to suggest that the DEA was aware or should have been aware that Collette was in jail at this time. The notice was not returned to the DEA; on the contrary, it was signed for and accepted. Thus, even though it is now clear that Collette was not able to receive this notice, the DEA's actions were not unreasonable at that time. There is no duty for the DEA to check on a daily basis whether an address remains good when they receive no information to suggest otherwise. In fact, for this notice, the Green Card signed by Karen Brown that was returned to the DEA reinforced its belief that the address was a good address.

However, for the other four notices, three of them were returned to the DEA as "unclaimed" and the DEA received nothing at all pertaining to the fourth notice. While it is clear that Collette did not receive actual forfeiture notices for these items, actual notice is not the standard. The requirement is that the government make reasonable efforts to apprise property-owners that their property is being forfeited. When the initial notice letter is returned undelivered to the government, "the government must make reasonable additional efforts to provide personal notice."[49] Here, the government made reasonable additional efforts, even though these efforts may not have been ideal.

**45.** Clerk's Docket No. 25.

**46.** *Id.*

**47.** *Id.*

**48.** These notices were mailed pertaining to the Bank Account valued at $11,880.00, the 1988 Polaris Snowmobile, the $13,000 in United States Currency, the Apple Macintosh II Computer System, and the 25 and 7.5 HP Mercury Outboard Motors.

**49.** *United States v. Ritchie,* 342 F.3d 903, 911 (9th Cir.2003).

First, for the 1988 Polaris Snowmobile, the government initially sent out forfeiture notices to the 3221 Ester Dome Address and to the Cook Inlet Pre–Trial Facility. Both notices were returned to the DEA. The DEA then sent a third notice to a third address, the 2960 Ester Dome Road address. This, too, was returned to the DEA, marked unclaimed. Had the DEA sent out only one notice that was returned, that would have been an unreasonable effort. Two notices that were each returned to the government would have been a marginal effort by the government. Mailing a third notice, to an address provided by the petitioner's attorney, must qualify as a reasonable effort. While the notice was returned to the DEA, there has to be some ending point when the DEA is no longer obligated to keep searching for new addresses. The Government cannot be required to send countless notices until there is affirmative proof that the notice was received. The Court is unaware of any decision where the Government was required to make more than three efforts to personally notice the property-owner before proceeding with the forfeiture. Further, these three notices should not be read in a vacuum, they were in the context of multiple notices to Collette for twenty other forfeited items.

Second, for the forfeiture of the $13,000.00 United States Currency, the DEA again sent three separate notices to three separate addresses. The DEA sent a notice to the 3221 Ester Dome Road address that was returned to sender. The DEA sent a second notice to the Star Route address that was returned to sender. For the third notice sent to the 2960 Ester Dome Road address, the DEA received nothing in return or by way of response. The combination of the three separate notices and the numerous other forfeiture notices was a reasonable effort by the Government to apprise Collette of the pendency of this forfeiture.

Third, for the Apple Macintosh II Computer System, the DEA again sent three separate notices to three different addresses. The DEA sent a notice to Collette at the 3221 Ester Dome Road address that was returned to sender. The DEA sent a notice to Collette at the Star Route address that was returned to sender. For the third notice sent to the 2960 Ester Dome Road address, it was returned to sender unclaimed. Again, the combination of the three separate notices and the numerous other forfeiture notices was a reasonable effort by the Government to apprise Collette of the pendency of this forfeiture.

Fourth, for the 25 and 7.5 HP Mercury Outboard Motors, the DEA only sent two notices. The DEA sent a notice to the 3221 Ester Dome Road address that was returned to sender. The DEA also sent a notice to the 2960 Ester Dome Road address that was returned unclaimed by sender. While only sending out two unsuccessful notices is a marginal effort by the DEA to attempt notice, these notices were not sent in a vacuum. They were sent in the context of multiple notices for 20 other forfeited items. Thus, even though the effort for this one item was on the low end of what constitutes reasonable effort, it is enough to satisfy due process.

## IV. CONCLUSION

For the reasons stated herein, the efforts of the DEA to notify Collette of the forfeiture proceedings comported with the requirements of due process, therefore Collette's Complaints are **DISMISSED.**